640 A.2d 1387

**ASSOCIATION OF RETARDED CITIZENS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GOLDEN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 18, 1994.

Decided April 12, 1994.

Donald T. Rogers, for petitioner.

Michael R. Goffer, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Association of Retarded Citizens (ARC) petitions this Court for review of a Workmen's Compensation Appeal Board (Board) order affirming the referee's decision to award Shirley Golden partial disability benefits from November 26, 1990 to

November 14, 1991 and total disability benefits of $400.93 continuing indefinitely thereafter.[1]

The referee found the following pertinent facts:

On January 16, 1990, Golden sustained a fractured sacrum and bruised coccyx in the course of her employment. Before her injury, Golden had performed two separate jobs for ARC and had also had a third job at St. Joseph's Center. Golden had worked about forty hours per week for ARC as a group leader for seniors at Robinson Park. She had also worked for ARC as a part-time resident assistant at group homes at night. Golden worked part-time at St. Joseph's Center when she was not working for ARC.

Golden's average weekly wage paid to her by ARC at the time of her injury had been $601.39. After her injury, a notice of compensation payable was filed, affording her weekly compensation at the rate of $400.93 beginning as of the date of her injury. Afterwards, a supplemental agreement, executed on April 16, 1990, provided that Golden had returned to her employment as of March 14, 1990 with a loss of earnings, and she was therefore entitled to partial disability compensation of $51.78 per week. Another supplemental agreement, executed on June 3, 1990, provided that Golden suffered additional wage loss and awarded her compensation for that loss.

On March 14, 1990, Golden resumed employment with ARC as a group leader in the seniors' day program. Her treating physician, Dr. Harry Schmaltz, had released her to return to modified work the day before. She also returned to her work at St. Joseph's Center. She has not worked as a resident assistant since the date of her injury.

Golden testified that she could not return to employment as a resident assistant because her injury restricts her from work involving aggressive clients. Golden left the seniors program

1. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

and started to work in the prevocational program where, in her opinion, the clients were not aggressive. Golden was given notice to resume her employment at a group home on November 26, 1990. She did not do so, but testified she gave ARC a doctor's note explaining that she was restricted from working with aggressive clients.

Moreover, according to Golden, in November of 1991 her program manager stated there would be a policy change and that all group leaders would have to take turns working with aggressive clients. Golden had a meeting with the ARC manager, her program manager's supervisor, telling her she was restricted from working with aggressive clients. The ARC manager told Golden that she might have to work with aggressive clients and that there was no available light duty work. Golden did not return to her employment as a group leader at ARC after November 14, 1991. The compensation checks she received because she was disabled from her resident assistant job were ongoing, however. Also, Golden has remained employed by St. Joseph's Center.

On January 28, 1991, ARC filed a petition for suspension of Golden's benefits as of November 26, 1990, claiming Golden was no longer disabled.[2] The petition also asserted that ARC had offered Golden full duty employment. The referee found Golden's testimony credible and convincing. He also found the opinions of Golden's medical experts, Drs. Schmaltz and Bessoir, credible and convincing that she should be restricted from employment involving aggressive clients. Dr. Schmaltz, after reviewing the results of an MRI which showed Golden's disc protrusions at L4–L5 and L5–S1, stated that it was conceivable the mechanism of her work injury can affect her lower lumbar discs. The referee accepted the opinions of Golden's medical experts over the opinion of ARC's medical expert, Dr. Kenneth Gentilezza, who felt that Golden had completely recovered from her work injury and that she needed no physical restrictions placed upon her as of October

2. This petition was amended to request a termination as well.

11, 1991.[3]

The referee determined that, in November of 1990, Golden could not resume employment in a group home because of her physical restrictions; that by November 15, 1991, Golden could no longer perform her job as a group leader because she was restricted from working with aggressive clients; and that by November 15, 1991, work suitable to her physical restrictions was not available to Golden.

The referee denied ARC's petition. He ordered that Golden receive partial disability compensation at the rate of $51.78 per week from November 26, 1990 to November 14, 1991 and that, from November 15, 1991 to continue indefinitely thereafter, Golden receive temporary total disability compensation at the rate of $400.93 per week. As well, he ordered that ARC receive a credit against benefits for partial disability paid to her at the rate of $51.78 per week from November 15, 1991 to the date of his decision. (Referee's Findings of Fact Nos. 2–6, 8–15, 18, 20, 23 and 29–30, December 17, 1992) On appeal, the Board affirmed. This appeal followed.

First, ARC argues that the Board erred in affirming the referee's finding that it paid Golden an average weekly wage of $601.39 as of the date of her injury. Specifically, ARC posits that the referee mistakenly arrived at this figure (plus one cent) by adding Golden's average weekly wage of $229.60 as set forth in the original notice of compensation payable to her average weekly wage of $371.80 as set forth in the amended notice of compensation payable. Thus, ARC contends, the referee considered Golden's full-time employment *twice* when calculating her average weekly wage.

We begin by noting that the record in this case is missing pertinent information and that an amended notice of compensation payable is not included in it. Therefore, we cannot consider ARC's theory of how the referee arrived at the $601.39 figure. On the other hand, we cannot locate the

3. Although the date the referee finds Dr. Gentilezza would place no restrictions on Golden is October 11, 1991, a review of the doctor's testimony reveals it to be October 11, 1990.

statement of wages the referee apparently reviewed to arrive at the $601.39 figure.

Nonetheless, in response to ARC's argument, Golden counters that this amount is substantiated by the record and that, in any case, ARC has not preserved for review the issue of the referee's determination of Golden's average weekly wage at ARC. According to Golden, this is so primarily because ARC did not object to the $601.39 figure put forth by the referee during the hearing.

We have reviewed the record and conclude that there was general confusion as to the average weekly wage Golden made at ARC. At the September 2, 1992 hearing, the referee stated that the case would be kept open for an additional thirty days so that further evidence of Golden's average weekly wage could be submitted by Golden, at her request. ARC states in its brief to us that

> [c]ounsel for Claimant directed correspondence to the Referee on September 9, 1992, in accordance with his request ..., which reflected Claimant's yearly income for the year preceeding [sic] her injury to be $18,025.71. Not only is that letter missing from the record but each of the missing documents established or tend to establish [sic] that Claimant's average weekly wage was actually $371.80.

(Petitioner's brief, p. 12)

Clearly, ARC did not waive this matter because it could not have known until the referee's decision came down that he had settled on $601.39 as the applicable figure. To this extent, this case differs from *DeMarco v. Jones & Laughlin Steel Corporation*, 513 Pa. 526, 522 A.2d 26 (1987), wherein our Supreme Court held that a res judicata defense raised for the first time before the Board, when it should have initially been raised before the referee, was waived. ARC had no reason to seek redress until the referee's determination of Golden's average weekly wage came down—once it did, ARC appealed this finding at the first opportunity.[4]

4. When we turned for guidance to the Board's decision in this matter, we were little aided. The Board's opinion completely skirts the issue.

As we have stated, our examination of the record in this matter reveals it to be sorely lacking in information relevant to Golden's wages. Even so, the $601.39 figure reached by the referee is probably incorrect, based primarily on a 1989 earnings analysis of Golden's wages at ARC. *See* Defendant's Exhibit No. 6.

According to that analysis, which contemplates Golden's earnings at both her jobs with ARC, Golden made a total of $14,826.75 in 1989—or approximately $285.00 per week. We recognize, of course, that this figure does not preclude a determination of $601.39 because the wages must be calculated based on Section 309 of the Act,[5] 77 P.S. § 582, but it is certainly sufficient for us to remand for a recalculation, given the state of the record. We will therefore remand the matter to the Board to remand to the referee for a recalculation of Golden's average weekly wage and concomitant benefit rate.

Second, ARC contends that the Board erred in affirming the referee's decision because it was not given credit for compensation paid to Golden even though she had resumed work at two of the jobs considered in computing her average weekly wage. ARC is particularly concerned with obtaining credit for the wages earned by Golden at St. Joseph's Center and cites *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar)*, 103 Pa.Commonwealth Ct. 562, 520 A.2d 958 (1987) in support of its assertion.

In *Investors Diversified Services,* we concluded that a claimant's wages, earned while he worked part-time during graduate school, should have been credited to the employer. That case differs from the one at bar, however, because, here, Golden held three jobs *when she was injured* and at issue are the benefits she is receiving based on wages earned at two of them—both with ARC. Certainly, as Golden maintains, ARC cannot attempt to receive a credit for wages Golden earns at

In all fairness, however, we understand that the Board most likely faced the same unsatisfactory record we did.

5. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

St. Joseph's Center when she also earned those wages at the same time she was working both jobs with ARC.

█ Next, ARC complains that the Board erred in affirming the referee's finding that Golden is temporarily totally disabled rather than partially disabled because Golden had returned to her job at St. Joseph's Center as of March 14, 1990.

*Fronczak v. Workmen's Compensation Appeal Board,* 157 Pa.Commonwealth Ct. 374, 629 A.2d 1060 (1993), where a claimant held two concurrent jobs and could only return to one of them after the injury, continuing to work there until the business folded, is instructive in this regard. There we stated:

> Section 309(e) of [the Act], 77 P.S. § 582(e), provides, in pertinent part, that when "the employe is working under concurrent contracts with two or more employers, [her] wages from all such employers shall be considered as if earned from the employer liable for compensation." According to claimant, she is entitled to compensation based on her concurrent employment pursuant to Section 309(e) of the Act.

> . . . . .

> Although claimant worked concurrently for Bridal World and employer at the time of her injury, she is not entitled to receive benefits based on her wages from both employers. Regardless of the wording of Section 309(e) of the Act, Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, provides that "the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable." When interpreting the Act, "we must keep in mind that [it] is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Peterson v. Workmen's Compensation Appeal Board* (PRN Nursing Agency), 528 Pa. 279, 287, 597 A.2d 1116, 1120 (1991). We have opined, however, that the Act is to be interpreted reasonably and to avoid an unjust result. See *Visintin v. Workmen's Compensation Appeal Board* (Hale

Pump Company), 127 Pa.Commonwealth Ct. 244, 561 A.2d 372 (1989). Mindful of these principles, we hold that the Board properly reversed the referee's determination of claimant's rate of compensation. *Although claimant was totally disabled from her job with employer, she was not disabled from her job with Bridal World. Section 309(e) of the Act, 77 P.S. § 582(e), notwithstanding, it is unjust to permit her to receive benefits based on her wages from Bridal World when she was not disabled from that job.* The Board properly concluded that claimant's benefits should be based solely on her wages from employer. *Id.,* 157 Pa.Cmwlth. at 377–79, 629 A.2d at 1062–1063. (Emphasis added.) (Footnote omitted.)

Clearly, then, based on *Fronczak,* the referee in this matter could properly find Golden temporarily *totally* disabled from her jobs at ARC although she is not disabled from her job at St. Joseph's Center.[6]

 Last, ARC contends that the Board erred in affirming the referee's finding that Golden had not made a full recovery from her work-related injury and that she had presented unequivocal medical evidence of her work-related disability. Based on previously developed case law, we find this argument unpersuasive.[7]

In *McGinley v. Workmen's Compensation Appeal Board (Acme Markets, Inc.),* 77 Pa.Commonwealth Ct. 214, 465 A.2d 147 (1983), this Court had before it a case in which a claimant, defending against a termination petition, presented the expert

6. *See also Investors Diversified Services* wherein we determined that evidence of the claimant's part-time employment for which she earned nominal remuneration did not satisfy "the affirmative burden on the employer to prove work availability so as to rebut the presumption of claimant's total disability." *Id.,* 103 Pa.Cmwlth. at 570, 520 A.2d at 962.

7. We feel it necessary to clarify that the referee found the testimony of Golden's medical experts, Drs. Schmaltz and Bessoir, "credible and convincing," not "unequivocal" as ARC maintains. We have read the testimony of these experts and there is no doubt that their testimony is equivocal on the issue of whether Golden's lumbar injury, the basis for restricting her employment, was related to her original work injury. We will therefore address ARC's argument that the equivocality of Golden's expert testimony requires a reversal of the Board's order.

testimony of Dr. Tice, a pharmacologist, who opined that the drug the claimant had been taking for his work-related pneumonia "contributed to a sense of imbalance." *Id.* at 215, 465 A.2d at 148. The referee, finding that the drug was causally related to a totally disabling fall the claimant suffered on the day he learned he had recovered from pneumonia, denied the termination petition. The Board reversed.

We said:

On appeal to this Court, the parties have focused their attention entirely upon the question of whether Dr. Tice's testimony was competent and could be relied upon by the referee. Upon full examination of the procedural posture of this case, however, we find this issue irrelevant at this time.

As this Court has just recently reiterated:

[T]he party seeking termination of workmen's compensation benefits has the burden of proving that all disability related to a compensable injury has ceased and that, *if a claimant is currently disabled, the petitioner must show a lack of causal connection between that disability and the compensable injury.* We have never held that in termination proceedings the burden shifts at anytime to the claimant to prove the existence of a causal connection between his disability and his injury. (Emphasis added.) (Citations omitted.)

*Unity Builders, Inc. v. Workmen's Compensation Appeal Board,* 50 Pa.Commonwealth Ct. 527, 532, 413 A.2d 40, 43 (1980), quoted in *Forbes Health System v. Workmen's Compensation Appeal Board* (Washington) [, 75 Pa.Cmwlth. 639, 463 A.2d 83] (No. 2525 C.D.1981, filed July 27, 1983). See also *George v. Workmen's Compensation Appeal Board,* 63 Pa.Commonwealth Ct. 23, 437 A.2d 521 (1981).

*Id.,* 77 Pa.Cmwlth. at 216–217, 465 A.2d at 148–149.

Consequently, ARC's argument that Golden's medical testimony was equivocal is of no moment. We have followed this principle time and time again. *See, e.g., Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 142 Pa.Commonwealth Ct. 176, 597 A.2d 182 (1991), *reversed on*

*other grounds,* 534 Pa. 327, 632 A.2d 1302 (1993); *Iacono v. Workmen's Compensation Appeal Board (Chester Housing Authority),* 155 Pa.Commonwealth Ct. 234, 624 A.2d 814 (1993). What *is* important here is that ARC did not meet its burden of proof simply by offering the testimony of its expert, Dr. Kenneth Gentilezza. Although Dr. Gentilezza unequivocally opined that Golden had fully recovered from her work injury as of October 11, 1990 (N.T., Deposition of Dr. Kenneth Gentilezza, November 19, 1991, p. 33), the referee obviously believed Golden's experts more.

As previously stated, the issue of whether Golden's expert testimony was unequivocal or not is not relevant. The issue is whether ARC met its burden of proof. It did not.

Accordingly, we affirm the Board's order with the exception that we remand the case to the Board for remand to the referee for new findings as to Golden's average weekly wage and concomitant benefit rate.

## ORDER

AND NOW, this 12th day of April, 1994, the order of the Workmen's Compensation Appeal Board, No. A93–0037, dated September 27, 1993, is affirmed with the exception that the case is remanded to the Board for remand to the referee for new findings as to Golden's average weekly wage and benefit rate.

Jurisdiction relinquished.