561 A.2d 372

**Daniel VISINTIN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HALE PUMP COMPANY), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1988.

Reconsideration Granted March 13, 1989.

Decided June 29, 1989.

Marc S. Jacobs, Galfand, Berger, Senesky, Lurie & March, Philadelphia, for petitioner.

Peter J. Weber, Andrew E. Greenberg, Rawle & Henderson, Philadelphia, for respondents.

Before CRAIG and COLINS, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Petitioner in this workmen's compensation case, Daniel Visintin, (Claimant), originally sought review by us of an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's decision on several issues concerning Claimant's average weekly wage and his partial disability rate of compensation payments. This Court recorded a disposition of that appeal in an opinion filed January 20, 1989, *Visintin v. Workmen's Compensation Appeal Board (Hale Pump Company)*, 553 A.2d 477 (1989). Subsequently, an application for reargument filed by Petitioner was treated by the Court, by order dated March 13, 1989, as an application for reconsideration and granted as such on that date. On reconsideration, the revised disposition of this Court is presented in the following opinion which will be substituted for the previous one and it will be so ordered.

It is undisputed that Claimant suffered serious and continuing disability from injuries sustained on June 30, 1981 while in the employ of Hale Pump Company, Employer, as a radial drill press operator, with average weekly wages computed and fixed in a prior referee's decision at $757.00, including overtime. Claimant's original and persisting disability arises from back conditions described by the referee as "lumbo-sacral sprain and strain," sustained "while lifting a casting weighing approximately (70) seventy pounds." Referee's Finding of Fact No. 2. Weekly benefits were paid pursuant to a Notice of Compensation Payable dated July 21, 1981 at the rate of $262.00 [1] per week commencing July 1, 1981. The prior Termination Petition was filed by Employer on August 18, 1981, and resulted in a referee's decision dated July 1, 1983. In that decision as recorded in

---

1. $262.00 was the "maximum compensation payable" provided for total disability in 1981 under Section 306(a) as limited by Section 105.2 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 511, 25.2.

Finding No. 3 by the referee in this case, the referee in the former decision had found:

... that although Claimant was not presently capable of returning to work as a radial drill press operator, he was capable of performing work as of November 23, 1981, within certain limitations.

Referee's decision dated May 15, 1986.

The referee also found, in the decision in the instant case, as follows:

4. The referee further found that beginning March 2, 1982, work became available in the Delaware Valley area within claimant's vocational, educational and physical limitations paying $180.00 per week. Your Honor[2] awarded claimant the maximum partial disability rate of $262.00 per week.

5. The Referee accepts Dr. Pearlstein's conclusion that claimant was and still is incapable of performing his original job as a radial drill press operator.

6. Claimant returned to work for defendant as a NC lathe trainee on October 4, 1982.

7. The average number of weekly overtime hours available to radial drill press operators in defendant's employ decreased drastically during the First Quarter of 1982. Your Honor adopts as a finding of fact defendant's Table I, attached hereto, exemplifying this. Therefore, the correct 306 wage cap is the average weekly wage of radial drill press operators Hughey, Thompson, Nichols and Loehr.

8. The Referee accepts as a finding of fact Tables II through V, attached hereto, which determine the average weekly wage of these radial drill press operators from the fourth quarter of 1982 through the second quarter of 1984.

2. This term, "Your Honor", appearing in this finding is obviously a reference to the referee in the prior decision of July 1, 1983 which was unappealed, but the same reference in Finding No. 7 appears to be a reference to the referee in this case. In fact, it appears that the same referee officiated in both cases.

9. The Referee accepts as a finding of fact Table VII, attached hereto, which calculates the four radial drill press operators' average weekly wage from the third quarter of 1982 until the second quarter of 1984. Your Honor accepts the last column, entitled "Co-employees' A.W.W." as the appropriate wage cap for each quarter calculated, i.e., 414.38 (4th, 1982); 400.29 (1st, 1983); 462.69 (2nd, 1983); 393.74 (3rd, 1983); 433.28 (4th, 1983); 453.86 (1st, 1984) and 568.16 (2nd, 1984).

10. The Referee accepts as a finding of fact, Table VI, attached hereto, which calculates claimant's average weekly wage as a NC lathe operator from the fourth quarter of 1982 until the second quarter of 1984.

11. The Referee accepts as a finding of fact, Table VIII, attached hereto, which calculates claimant's correct compensation entitlement for each quarter calculated, i.e., 43.90/wk (4th, 1982); 15.57/wk (1st, 1983); 9.38/wk (2nd, 1983); 0.00/wk (3rd & 4th, 1983); 33.79/wk (1st, 1984) and 81.36/wk (2nd, 1984).

As will appear, the referee's 7th, 8th, 9th, 10th and 11th Findings cannot be accepted fully as written. In those Findings and the referee's second Conclusion of Law [3] the earnings of four employees serving as radial drill press operators are averaged over a certain period during which Claimant served as an NC lathe trainee, from October 4, 1982. Finding of Fact No. 6, quoted above.

On the basis of the referee's Finding No. 7, the Claimant's average weekly wage as originally established by the decision of July 1, 1983, was reduced by averaging the earnings of four drill press operators and using their averaged earnings as a maximum or wage cap for establishing

3. The second Conclusion of Law reads:
2. Pursuant to Section 306(b) claimant may not earn more in compensation and wages for any period than the average A.W.W. of radial drill press operators Hughey, Thompson, Loehr and Nichols for the same period. Claimant accordingly is entitled to weekly compensation in the amounts set forth in Finding of Fact 11, above, from the fourth quarter of 1982 through the second quarter of 1984 and into the future based upon quarterly calculations comparing co-employee wages and claimant's wages consistent herewith.

what Claimant would have earned as a drill press operator had he not been injured; the referee then, by subtracting therefrom Claimant's present earnings as a lathe trainee, reached a loss in earnings, two-thirds of which was awarded as partial disability compensation. As noted, the earnings of the four drill press operators were averaged to reach a post-injury maximum on which partial disability compensation could be computed.[4]

We have several disagreements with the decisions of the referee and Board which require a remand.

### 1. Interpretation of Section 306(b) as to Limitations on Partial Disability Compensation

■ We find that while the referee and Board correctly designated, as the controlling legal provision, Section 306(b) of The Pennsylvania Workmen's Compensation Act. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512, we cannot agree with the referee's and Board's application thereof in this case.

The controlling provisions in Section 306(b) read:

(b) For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; . . . and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a *fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.* (Emphasis added.)

First of all, we do not interpret that the employment of a fellow employee may be "similar to that in which the injured employe was engaged at the time of the injury," if that employee's earnings at the time of the injury are

---

4. We note that none of the four drill press operators had earnings comparable to Claimant's pre-injury wage of $757.00 per week. In fact, their average was $451.02, or $305.98 less than Claimant's weekly earnings. Claimant's Brief, p. 11.

completely out of line with the then earnings of the injured employee. In this connection, we note that Claimant out-produced all other drill press operators prior to the injury quite substantially, and that the pay of such operators was on a production basis. *See* Footnote 4 above.

We are confronted, of course, with the necessity of interpreting the legislative intent to be derived from examination of that portion of Section 306(b) which is quoted above. The emphasized clause in the above quoted Section of 306(b) has been considered in different contexts in two cases. *Duquesne Light Company v. Workmen's Compensation Appeal Board (Klein)*, 77 Pa.Commonwealth Ct. 67, 465 A.2d 81 (1983), relied upon by the Board, does not require that a referee accept, as comparable, wages of employees whose production and earnings are totally incomparable. Also, in *Duquesne Light*, we were rejecting a contention that the cap or limit on claimant's partial disability payments should be based upon the lowest earnings among fellow employees. There were other differences distinguishing that case from this one. Claimant there was working in his injury date employment, losing only overtime, but still receiving more in wages and compensation than several of his co-workers. Here Claimant is unable to perform his injury date work and is re-employed in lighter duty work.

In *Duquesne Light*, however, the legislative purpose of the clause in question was examined with the following conclusion:

Duquesne contends that, if a claimant's wages and compensation for a given period total more than the wages of any co-worker for the same period, he should be denied benefits. This interpretation does not serve the remedial nature of the Act, which was designed to offset the losses of injured workers. Section 306(b) is intended to assure that the system-of-loss measurement remains calibrated; that changing conditions do not transform compensation into unjust enrichment.

Having so stated, we then decided in that case that Claimant's partial disability rate must be calculated as of the date of reduced earnings rather than at the date of the injury. Thus, it is clear that a reasonable construction must be employed in order to avoid an unjust result.

In *McGraw–Edison v. Workmen's Compensation Appeal Board (Ardeno)*, 120 Pa.Commonwealth Ct. 19, 547 A.2d 1290 (1988), twenty-three injured employees were involved, all of whom had been re-employed and were being paid compensation for partial disability computed at two-thirds of the difference between the injury date wage of each of them and the wage each was able to earn in his partial disability job. As the result of a negotiated wage concession agreement, all employees, including the injured ones, received less in post-injury wages, but each of them then received more in compensation, because the compensation figure was increased in each case to maintain the benefit rate for the injury loss, with the result that the claimants received wages and compensation benefits combined, totaling more than the post-injury wages earned by other employees performing the pre-injury jobs of the claimants. We held that the Board correctly read the applicable language in Section 306(b) to require the comparison to be made as of the time of the injury, stating:

> after careful examination of the language of this statute, we believe that the Board was correct in holding that Section 306(b) establishes a comparison of wages with similar employees at the time of the injury, rather than at a time prior or subsequent to the claimant's injury. As stated above, the purposes of Section 306(b) *is to offset the losses of injured workers,* and to assure that the system of loss measurement remains calibrated. Setting the wage comparison at the time of the injury assures a claimant that he or she will be made whole. Additionally, claimants receiving partial disability benefits at this comparison rate cannot suffer a decrease in the amount of partial disability benefits received based on a wage cut affecting fellow employees, nor can they enjoy an in-

crease in their disability payments if their fellow employees wages rise. If, however, the wage comparison were set at the time of the wage loss, a claimant's compensation could, potentially, vary greatly from his time of injury wage, thus, undermining the purpose of the Act. (Emphasis added.)

While the legislative intent is not clear, we believe that the language in question, as with any legislative language, may not be construed as fostering an absurd result. The clause must be construed sensibly.[5]

We commence our analysis by noting that the first portion of the quoted section of Section 306(b) has been in the statute from the beginning and was enacted in its present form in the re-enactment of 1939 providing that the partially disabled employee should be paid "sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter. . . ." This is the key partial disability clause and only if this provision is observed as paramount is it possible for the injured employee to be paid for his loss in earning power caused by the injury and we believe, as indicated in *Duquesne Light* and *McGraw–Edison,* that the final clause,

5. Liberality of construction prevails with the purpose to avoid an unjust result. *See* the early case of *Dunn v. Trego,* 279 Pa. 518, 124 A. 174 (1924), wherein the Supreme Court stated:

We, with most other courts, have from the beginning put a liberal construction on the Workmen's Compensation Act (Maguire v. James Lees & Sons Co., 273 Pa. 85, 88) . . .

In *Carpinelli v. Penn Steel Castings Co.,* 209 Pa.Superior Ct. 390, 227 A.2d 912 (1967), the Superior Court stated:

Moreover, the Workmen's Compensation Law, being remedial legislation, should be construed liberally and interpretations resolved in favor of those it intended to benefit. *Wall v. Conn Welding and Machine Company,* 197 Pa.Super. 360, 367, 179 A.2d 235, 238 (1962). We have stated recently:

At the outset we note that compensation laws are socially oriented and must be construed liberally in order to effectuate their beneficent purposes. Dunn v. Trego, 279 Pa. 518, 124 A. 174 (1924); Carpinelli v. Penn Steel Castings Co., 209 Pa.Superior Ct. 390, 227 A.2d 912 (1967); . . .

*Oakes v. Workmen's Compensation Appeal Board,* 79 Pa.Commonwealth Ct. 454, 458, 469 A.2d 723, 725 (1984).

specifically under consideration here, was added only to prevent unjust enrichment.

Indeed, it is evident that this portion of the Amendment of 1939 was the Legislature's remedy for a state of the partial disability case law which permitted payment for loss of earning power regardless of post-injury earnings. *See Weinstock v. United Cigar Stores Co.*, 137 Pa.Super. 128, 8 A.2d 799 (1939); *Keister v. Phila. & Reading C. & I. Co.*, 134 Pa.Super. 104, 4 A.2d 188 (1938); *Harmon v. Knoll*, 129 Pa.Super. 390, 195 A. 448 (1937). These cases stood for the then current rule that compensation received by an injured employee on returning to employment did not necessarily represent "earning power" as stated in the first clause of Section 306(b). For example, in *Weinstock* the injured employee on returning to work was paid more than his earnings before the injury, but his partial disability represented a loss in earning power for which he was entitled to receive compensation.

To avoid this result, the statutory definition of "earning power" was added to Section 306(c) to limit the post-injury loss to the difference between the injury date wages as fixed under Section 309 and the amount the partially disabled employee *received* in post-injury employment. This provision, of course, would make no sense, if, as the Board would hold, a claimant's post-injury compensation for loss in earning power and earnings must be disregarded and limited by what some less productive employee is able to earn. Rather, we believe that it was the "unjust enrichment" that existed under the *Weinstock* formula that the clause in question was intended to prevent. In short, we do not believe that the *present* earnings of fellow employees which are less than Claimant's agreed pre-injury wage or earning power can form the basis for a reduction in compensation otherwise payable for Claimant's loss in earning power. We are compelled to this conclusion because we believe it to be inconceivable that the Legislature intended that compensation payable to an injured employee for his compensable partial disability should be reduced, not because he has

become more able and is earning more at his partial disability job, but solely because there is a less productive employee earning less now than claimant earned when able-bodied prior to his injury. Such a construction, as is noted in *McGraw–Edison,* fails in the purpose of the Act to "offset the losses of [this] injured worker," for a reason that is not rationally related to that loss. Thus, it is clear to us that the rulings of the compensation authorities as to the application of the clause in Section 306(b), quoted above, cannot be accepted.

Accordingly, on the remand, it will be directed that the compensation authorities enter an award to the Claimant for his partial disability which is based on two-thirds of the difference between his injury date earnings and his present earnings, figured approximately on earnings during his own post-injury calendar quarters, *see* Parts 2 and 3 hereof, and subject, of course, to statutory limitations.[6]

### 2. Recomputation for Weeks Prior to the Referee's Decision of July 1, 1983

█ We come now to our second disagreement with the referee's decision as affirmed by the Board, namely, that previously fixed partial disability compensation may be reviewed and altered retroactively to a date prior to the referee's decision of July 1, 1983. Familiar principles of *res judicata* dictate that such an unappealed decision and adjudication including a finding is final and controlling as of the date of the finding and such determination is conclusive upon the parties, and not subject to alteration based upon a change in the theory as to the essential nature of the inquiry. *Jones & Laughlin Steel v. Workmen's Compensation Appeal Board (DeMarco),* 89 Pa.Commonwealth Ct. 41, 491 A.2d 941 (1985), *rev'd. on other grounds,* 513 Pa. 526, 522 A.2d 26 (1987); *Lerner v. Workmen's Compensation Appeal Board (Philadelphia Psychiatric Center),* 38

---

6. Section 306(b) of the Act limits partial disability weekly benefits to no "more than the maximum compensation payable." *See* Section 105.2, 77 P.S. § 25.2.

Pa.Commonwealth Ct. 136, 392 A.2d 330 (1978). Accordingly, any readjustment of the determination or change in the partial disability compensation payable to Claimant by the process provided in Section 306(b), as discussed in Part 1 hereof, may only begin with the third quarter of 1983 and include the last four quarters of wages earned by Claimant as a lathe trainee.

### 3. The Overtime Question

■ We must also reject the referee's effort to readjust the fixed and adjudicated average weekly wage of Claimant in the amount of $757.00, including overtime, as it has long been established that overtime may not be eliminated in determining the pre-injury average weekly wage. *Devlin v. Iron Works Creek Construction Co.*, 164 Pa.Superior Ct. 481, 66 A.2d 221 (1949).

It follows, therefore, that we cannot agree that the average weekly wage should be reduced for partial disability purposes. To achieve a proper determination of the extent of benefits, as we read the law, Claimant's average weekly earnings in his present partial disability employment must be computed at one-thirteenth of each of the four quarters noted and this amount in each quarter should be deducted from the average weekly wage of $757.00. Two-thirds of the resulting figure will provide the earnings component in the formula laid down by Section 306(b), subject to reduction to the extent that the total of wages and compensation would otherwise exceed Claimant's pre-injury average weekly wage of $757.00.

### 4. Credit for Overpayments

■ Finally, there remains one other major item which we deem to be error. We must disagree with the allowance of credit for alleged over-payments since October 4, 1982.[7]

7. The referee's third Conclusion of Law reads:
   3. This decision supercedes [sic] the interim Supplemental Agreement submitted by the parties during the pendency of this litigation and defendant shall be allowed to credit all overpayments since

As we have concluded above, there can be no change in the benefits ordered prior to the referee's unappealed decision of July 1, 1983; so there can be no reduction or credit for alleged over-payments of sums paid under that decision of July 1, 1983. As for the quarters in which partial disability benefits may properly be computed in the manner previously indicated, any over-payments which may be claimed as to the $262.00 per week adjudicated by the referee's decision of July 1, 1983, may not be recouped by deduction from future benefits due for Claimant's partial disability, as the referee has concluded in his second Conclusion of Law, Footnote 3, above, since the Employer's request for supersedeas was denied as of September 13, 1983 in the referee's decision as of that date, filed September 16, 1983. The request for the amounts of suggested over-payments must be presented to the Supersedeas Fund.[8] *Vas v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, 109 Pa.Commonwealth Ct. 447, 531 A.2d 555 (1987).

Of course, we express no opinion as to whether or not and for what period the defendant is entitled to recover from the Supersedeas Fund; and, if recovery is permitted, what period may be covered in accordance with the rulings of this Court in such supersedeas matters.

Accordingly, for the reasons stated, we will remand for partial disability computations not inconsistent with this opinion.

### ORDER

NOW, June 29, 1989, the opinion of this Court filed in this case as of January 20, 1989, printed at 553 A.2d 477 (1989),

---

October 4, 1982 at the rate of $25.–0/wk [sic] against future compensation.

**8.** When a supersedeas is denied, however, the claim against the Supersedeas Fund can only be granted for over-payments made after the date of the request for a supersedeas. *Great American Insurance Co. v. Workmen's Compensation Appeal Board*, 58 Pa.Commonwealth Ct. 13, 426 A.2d 1284 (1981); *Westmoreland Casualty Company v. Workmen's Compensation Appeal Board*, 32 Pa.Commonwealth Ct. 492, 379 A.2d 1080 (1977).

pursuant to reconsideration granted, is hereby vacated; the foregoing opinion is substituted therefor; and the order of the Workmen's Compensation Appeal Board, dated May 8, 1987, as of No. A–91707, is hereby reversed and this case is remanded for computation of benefits to which Claimant is entitled in accordance with the foregoing opinion of this Court.

Jurisdiction relinquished.