639 A.2d 890

HARPER & COLLINS, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (BROWN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Jan. 14, 1994.

Decided March 10, 1994.

462

Matthew D. Dempsey, for petitioner.

Todd J. O'Malley, for respondent.

Before PELLEGRINI and FRIEDMAN, Judges, and LORD, Senior Judge.

LORD, Senior Judge.

Harper & Collins (Harper) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's order granting Rachel Brown's review petition and amending a supplemental agreement between Harper and Brown to provide for continuing partial disability benefits under The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

The facts in this case are not in dispute. On August 12, 1991, Brown suffered a work-related injury in the nature of bilateral mild tendonitis while in the course of her employment with Harper. The parties executed a notice of compensation payable providing workmen's compensation benefits to Brown at the rate of $427.12 per week, based on an average weekly wage of $640.68.

On March 2, 1992, Brown returned to work full time at her pre-injury wage rate at a light duty position. Upon her return, Brown signed a supplemental agreement suspending benefits until her average weekly wage was determined. Several months later, Brown filed a review petition, alleging that she suffered a loss of earning power as of the date of her return to work. The parties filed a stipulation of facts in which it was agreed that "[p]rior to her injury there was overtime available for claimant which accounted for her average weekly wage of $640.68." Brown also stipulated that "[a] difference between her present wage and her pre-injury wages is due to the economic condition and not her disability. No overtime is available to claimant due to the economy."

The referee granted Brown's review petition and ordered compensation payments for partial disability to be paid at the rate of $104.98 per week for the period commencing March 2, 1992. Harper appealed to the Board, which affirmed the referee's order. Harper now appeals to this Court.

■ Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

■ Harper argues that Brown is not entitled to partial disability benefits because she stipulated that any difference between her present wage and her post-injury wage is due solely to economic conditions and not to her disability. Harper submits that under Section 413 of the Act, 77 P.S. § 772, a referee can order a resumption of benefits during the period of a suspension "unless it be shown that the loss in earnings does not result from the disability due to the injury."

Initially, we note that this provision applies "where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury." 77 P.S. § 772. In this case, it is clear that Brown's earnings are not equal to or in excess of her wages prior to her injury.

Further, the supplemental agreement signed by Brown only suspended benefits until a determination of her average weekly wage could be made. Her petition for review to the referee followed.

There is no contention that Brown no longer has a work-related injury or that Harper is no longer liable for disability caused by that injury. Nor does the stipulation imply otherwise. The Supreme Court of Pennsylvania has interpreted Section 413 of the Act and has set out the law in a suspension of benefits situation:

> A 'suspension of benefits' is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation. Should a claimant seek to have a suspension lifted, he is required to demonstrate only that the reasons for the suspension no longer exist. Simply, a claimant must show that while his disability has continued, his loss of earnings has recurred.

*Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 33, 584 A.2d 301, 304 (1990). Here, the parties have stipulated that, upon returning to work, Brown suffered a loss of earnings from her pre-injury average weekly wage. Under *Pieper,* we conclude that the referee properly ordered partial disability benefits.

■ Harper next argues that the Board's decision, in allowing Brown benefits based upon her overtime earnings, gives her an economic advantage over her fellow employees, to whom overtime is no longer available. Harper argues that this inequity is statutorily prohibited by Section 306(b) of the Act, 77 P.S. § 512, which provides in relevant part:

> [I]n no instance shall an employe receiving compensation under this section receive more compensation and wages combined than a fellow employe in employment similar to that in which the injured employe was engaged *at the time of the injury.* (emphasis added).

This Court has interpreted this provision on several occasions. We have examined carefully the words of the statute emphasized above and held, just as the statute states, that the provision requires a comparison of wages with similar employees *at the time of the injury. McGraw–Edison v. Workmen's Compensation Appeal Board (Ardeno)*, 120 Pa.Commonwealth Ct. 19, 547 A.2d 1290 (1988), *petition for allowance of appeal denied*, 525 Pa. 607, 575 A.2d 571 (1990). *See also General Dynamics, Land Systems Division v. Workmen's Compensation Appeal Board (Blank)*, 145 Pa.Commonwealth Ct. 304, 603 A.2d 259 (1992). Thus, the relevant average weekly wage here is the wage at the time of Brown's injury, when Harper regularly provided its employees with overtime work.

Harper argues nevertheless that our decision in *Duquesne Light Company v. Workmen's Compensation Appeal Board (Klein)*, 77 Pa.Commonwealth Ct. 67, 465 A.2d 81 (1983) compels a different result. We have been presented with this argument before and have held that *Duquesne* does not compel a different result. *See, e.g., McGraw–Edison.* Harper contends that in this case *Duquesne* is not factually distinguishable, but that *McGraw–Edison* is, because Brown was working full time and overtime and subsequently had her overtime hours reduced while retaining her full pre-injury hourly rate of pay.

We disagree. In *Duquesne,* the claimant was injured but continued to work full time and overtime. When his employer prohibited him from working overtime as a precaution against further injury, the claimant filed for partial disability benefits. *We concluded that the claimant qualified for benefits as of the date he lost overtime. Id.* We also decided that the claimant could not receive benefits for any period in which he did in fact work overtime despite his employer's prohibition, such as overtime hours he worked during a two-week period several months after the overtime prohibition. *Id.* There is no mention in *Duquesne* of any difference between the average wages of the claimant's fellow employees on the date of injury as compared to the date the claimant lost overtime. Our decision in that case insured that the claimant was compensat-

ed for his loss of overtime wages from the date he actually lost overtime, rather than the date of his injury—at which point he was still receiving overtime wages.

In the case before us, Brown lost overtime—as well as her full time wage—on the date of her injury. Thus, *Duquesne* does not compel a different result from the one we reach here. This case is controlled by *McGraw–Edison*, where the average wages of fellow employees differed at different times and we concluded that average wages must be compared at the time of injury. We so concluded despite the fact that, due to a subsequently negotiated wage reduction, employee wages at the time the injured claimants returned to work were significantly lower than they had been at the time of injury. *Id.* *See also Visintin v. Workmen's Compensation Appeal Board (Hale Pump Co.)*, 127 Pa.Commonwealth Ct. 244, 561 A.2d 372 (1989).

Admittedly, there is a question of equity here because Brown's average weekly wage is higher than her fellow employees currently receive. However, we cannot ignore the Legislature's mandate of section 306(b) that a claimant's compensation and wages be compared to the wages of similarly employed workers *at the time of the injury*. In addition, there would also be equitable concerns where a claimant's fellow employees have received substantial wage increases following the claimant's injury. The equitable considerations involved and the interest of certainty were no doubt recognized by the General Assembly and have been addressed in *McGraw–Edison* and *General Dynamics*.

Accordingly, the order of the Board sustaining the referee's decision is affirmed.

## ORDER

AND NOW, this 10th day of March, 1994, the order of the Workmen's Compensation Appeal Board, No. A92–2702, dated August 10, 1993, is hereby affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. Because Claimant was still earning her pre-injury hourly wage of $12 after she returned to work, she did not prove a loss of earning power simply because she was no longer being paid overtime in addition to her hourly wage. As a result, the Board found that she was entitled to $427.12 in partial benefits.

Claimant stipulated that the difference between her present wages and her pre-injury wages was due to the unavailability of overtime due to economic conditions and not due to her disability.[1] Even though Claimant still makes her pre-injury hourly wage, works normal shifts, and could work overtime if available, the majority affirms the Board, holding that because at the time Claimant originally was disabled, her wages were inflated by the amount of overtime worked, she has lost her earning power. This reasoning, however, produces a result unintended by the Workmen's Compensation Act.

Under 77 P.S. § 772, the resumption of suspended benefits may not be granted when the loss in earnings is *not* the result of the disability. As our Supreme Court held in *Lash v. Workmen's Compensation Appeal Board (Jablonski)*, 491 Pa. 294, 420 A.2d 1325 (1980), when interpreting The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031, the word "disability" is synonymous with "loss of earning power." "Disability" may also relate to "loss of earnings." *Yoder v. United Benefit Life Ins. Co.*, 171 Pa.Superior Ct. 18, 90 A.2d 399 (1952). Here, Claimant admits that her inability to earn the identical wages she made prior to her injury is due to the unavailability of overtime, not her disability.

Claimant is back to work earning the *identical* hourly wage she made before her injury, and if the economy improves, has the potential to work the same overtime that she worked

1. The Referee's Finding of Fact No. 1 states that on September 23, 1991, a notice of compensation payable was filed with the Bureau of Workers'.Compensation setting forth that the Claimant suffered a work-related injury in the nature of bilateral mild tendinitis on August 12, 1991.

before her injury. Her earning power has not been affected by her disability. Because the Act is designed to award benefits to claimants who have a loss of earning power, not to provide additional income for those individuals able to return to work and earn pre-injury wages, Claimant should not be awarded additional benefits to make up the difference for overtime work that is no longer available.

Because 77 P.S. § 772 provides that only earnings lost as a result of a disability are compensable, I disagree with the majority and respectfully dissent.