672 A.2d 1319

**HARPER & COLLINS, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BROWN), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1995.

Decided April 2, 1996.

Reargument Denied June 4, 1996.

Matthew D. Dempsey, Scranton, for Harper/Collins.

Todd J. O'Malley, Scranton, for Brown.

Norman R. Haigh, Secretary, for W.C.A.B.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

NIX, Chief Justice.

Appellant, Harper & Collins, appeals from the Order of the Commonwealth Court which affirmed the Order of the Workers' Compensation Appeal Board ("Board") upholding the decision of the referee. The referee awarded Appellee, Rachael Brown, benefits pursuant to the Workers' Compensation Act, Act of June 4, 1937, P.L. 1552, § 1 (codified as amended at 77 P.S. §§ 1–1603) ("the Act") for a partial disability. This Court granted review to address the issue of whether the Act provides for the payment of partial disability benefits to an injured employee after she returns to a light duty position earning the same hourly rate as she was paid prior to her injury but less than her average weekly wage as calculated at the time of her injury due to the unavailability of overtime for all employees. For the reasons that follow, we affirm the Order of the Commonwealth Court.

On August 12, 1991, Appellee suffered an injury in the course of her employment. The parties executed a Notice of Compensation Payable, and Appellee began receiving weekly

total disability benefits in the amount of $427.12 based on her average weekly wage of $640.68. On March 2, 1992, Appellee remained physically unable to resume her pre-injury position but returned to a light duty position which paid the same hourly rate as she had been paid in her pre-injury position. Upon returning to this light duty position, Appellee signed a supplemental agreement which suspended her benefits until her average weekly wage could be determined. Later that month, Appellee filed a Petition for Review claiming a loss of earnings as of the date she returned to work in her light duty position. The parties entered into a stipulation of facts agreeing that prior to Appellee's work injury, overtime was available and this overtime accounted for Appellee's average weekly wage being $640.68. Appellee further stipulated that the difference between her earnings in her light duty position and her pre-injury position was due to economic conditions which made overtime unavailable and not her work-related disability.

The referee concluded that Appellant was entitled to partial disability benefits because upon her return to work her wages were less than her average weekly wage at the time of her injury. *Brown v. Harper & Row*, No. 207–46–1656, Conclusion of Law No. 2 (Oct. 7, 1992).[1] The Board affirmed the referee's Order, holding that Appellee's situation is not distinguishable from that of an employee who remains partially disabled and therefore is entitled to total benefits even though the employer ceases operations. *Brown v. Harper & Row*, No. A92–2702 (Workers' Compensation Appeal Bd. Aug. 10, 1993).

The Commonwealth Court, citing this Court's decision in *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990), upheld the referee's determination that Appellee is entitled to partial disability benefits. *Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown)*, 162 Pa.Commw. 461, 639 A.2d 890 (1994). It noted that "the

1. Harper & Collins, Appellant herein, and Harper & Row are the same entity in this matter. This matter was captioned using Harper & Row by the Workers' Compensation Referee and by the Board; however, on appeal to the Commonwealth Court and to this Court, Harper & Collins was used in the filings.

parties have stipulated that, upon returning to work, [Appellee] suffered a loss of earnings from her pre-injury average weekly wage. Under *Pieper* . . . the referee properly ordered partial disability benefits." *Id.* at 464, 639 A.2d at 891. The Commonwealth Court further rejected Appellant's argument that section 512 [2] of the Act precludes the award of partial disability benefits. According to the Commonwealth Court, the wage comparison referred to in section 512 must be made at the time the employee in question was injured. *Id.* at 465, 639 A.2d at 892. "Thus, the relevant average weekly wage here is the wage at the time of [Appellee]'s injury, when [Appellant] regularly provided its employees with overtime work." *Id.*

This Court granted Appellant's request for review to determine whether Appellee was properly awarded partial disability benefits where the difference between her average weekly wage at the time of her injury and the wage she presently earns in her light duty position is the result of Appellant's elimination of overtime hours for all of its employees. We now affirm the decision of the Commonwealth Court.

Appellant argues that Appellee was improperly awarded partial disability benefits because the hourly pay rate she receives in her light duty position is equal to the hourly pay rate she received in her pre-injury position. Although Appellee is now receiving less income than she was receiving prior to her injury, Appellant notes that this is the result of an economic slowdown which affected the ability of all employees to earn overtime pay. As additional support for its argument, Appellant points to the stipulation entered into by the parties

**2.** 77 P.S. § 512 provides in relevant part:

For disability partial in character . . . [compensation shall be] sixty-six and two-thirds per centum of the difference between the wages of the injured employe . . . and the earning power of the employe thereafter. . . . The term "earning power," as used in this section, shall in no case be less than the weekly amount which the employe receives after the injury . . . and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.

agreeing that Appellee was not prevented from performing overtime because of her injury and that her reduction in earnings resulted from economic conditions at Appellant's plant. According to Appellant, Appellee failed to meet her burden of proof that her loss in earnings had any relation to her disability as required by this Court's decision in *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990). Appellant further argues that section 772[3] of the Act prevents the award of partial disability benefits to Appellee as her loss in earnings is not related to her disability.

It is Appellee's position that she is entitled to partial disability benefits because she continues to suffer residual impairment which is related to her work injury and is presently experiencing a loss of earnings through no fault of her own. Appellee cites section 512 of the Act in support of her argument that her earning power upon returning to work in a light duty position, the amount she actually receives each week, is less than her pre-injury average weekly wage. Appellee additionally notes that the supplemental agreement entered into upon her return to work creates a presumption that her residual physical disability is causally related to her work injury. In light of the foregoing, Appellee contends that the Commonwealth Court was correct in affirming the Order of the Board.

 In reviewing matters under the Act, this Court is limited to making a determination as to whether there was a violation of constitutional rights, whether there was an error of law, or whether there was substantial evidence to support

---

3. 77 P.S. § 772 provides in relevant part:

A referee ... may ... modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award ... upon petition filed by either party ... upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased.... [P]rovided further, [t]hat where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

the findings of fact. *Gumro v. Workmen's Compensation Appeal Bd.*, 533 Pa. 461, 466, 626 A.2d 94, 97 (1993). We also note that the Act is remedial in nature and that its purpose is to benefit the workers of this Commonwealth. As such, the Act is to be liberally construed to effectuate its humanitarian objectives. *Krawchuk v. Philadelphia Elec. Co.*, 497 Pa. 115, 120, 439 A.2d 627, 630 (1981). Moreover, borderline interpretations of the Act are to be construed in the injured party's favor. *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 629, 389 A.2d 42, 47 (1978).

■ Section 512 of the Act sets forth the benefits an employee is entitled to receive when she is partially disabled. Pursuant to this section, an employee who continues to suffer from her work-related injury is entitled to receive a percentage of the difference between her wages at the time she was injured and her earning power upon her return to work. 77 P.S. § 512. The employee's pre-injury average weekly wage is determined pursuant to section 582 [4] of the Act which provides that an employee who is paid by the hour shall have an average weekly wage based upon her *total wages at the time of the injury*. The plain language of this section clearly requires the inclusion of overtime earnings in calculating the employee's average weekly wage. *Visintin v. Workmen's Compensation Appeal Bd. (Hale Pump Co.)*, 127 Pa.Commw. 244, 255, 561 A.2d 372, 377 (1989). Appellee's earning power upon returning to a light duty position, the amount she earned each week in this position, was less than her pre-injury average weekly wage. Additionally, there is no dispute that Appellee continues to suffer from her work injury and remains unable to return to her pre-injury position as a result of that

4. 77 P.S. § 582(d) provides in relevant part:

If at the time of the injury the [employe's] wages are fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury....

injury. As such, section 512 provides for the payment of partial disability benefits to Appellee.

In *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990), this Court was confronted with the issue of whether an employee had to prove a causal connection between a previous work-related injury and his current disability in order to receive a reinstatement of benefits. In setting forth the burden of proof, we held that if the employer puts forth sufficient evidence to establish that its liability should be terminated, it is then the employee's burden to prove that there is a causal connection between his current condition and his work injury. *Id.* at 32, 584 A.2d at 304. However, if there has only been a suspension of the employee's benefits, there is a presumption that a causal connection exists between the employee's current condition and his or her prior work injury. *Id.* at 33, 584 A.2d at 305. Although *Pieper* is not directly on point with the instant matter, our reasoning in *Pieper* is helpful in resolving the issue presently before us. In *Pieper* we stated that

a "suspension of benefits" is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides *equal or greater compensation.* Should a claimant seek to have a suspension lifted, he is required to demonstrate only that the reasons for the suspension no longer exist. *Simply, a claimant must show that while his disability has continued, his loss of earnings has recurred.*

*Id.* at 33, 584 A.2d at 304 (emphasis added). Like the claimant in *Pieper,* the instant Appellee's work-related disability continues as does her loss of earnings.

Thus we hold that although Appellee's loss in earnings upon returning to a light-duty position is the result of economic conditions at Appellant's work place, she continues to be entitled to partial disability benefits as she has not fully recovered from her work injury, remains unable to resume her pre-injury position, and is not presently earning wages equal

to or greater than her pre-injury average weekly wage. The Commonwealth Court's decision in *McGraw–Edison v. Workmen's Compensation Appeal Bd. (Ardeno)*, 120 Pa.Commw. 19, 547 A.2d 1290 (1988), *appeal denied*, 525 Pa. 607, 575 A.2d 571 (1990), is instructive. *McGraw–Edison* involved numerous modification petitions and reinstatement petitions filed by the employer and employees, respectively. All of the employees had suffered compensable, work-related injuries, and all eventually returned to light duty or restricted positions which paid less than their average weekly wages. As such, they all received compensation calculated as two-thirds the difference between their pre-injury average weekly wages and their wages upon returning to their light duty or restricted positions. Following the return to work of these injured employees, the employer negotiated a wage concession agreement and reduced the wages of all of its hourly employees. As a result, the partial disability benefits the injured employees received increased to reflect the difference between their pre-injury wages and their decreased post-injury wages. This resulted in the injured employees' post-injury wages and compensation benefits totaling more than the average wages earned by co-employees performing the injured employees' pre-injury jobs.

■ The Commonwealth Court held that the increase in compensation payments to the injured employees did not violate section 512 of the Act because the right of an injured employee to receive compensation vests when the employee suffers a compensable disability. *McGraw–Edison v. Workmen's Compensation Appeal Bd. (Ardeno)*, 120 Pa.Commw. 19, 22, 547 A.2d 1290, 1292 (1988). In so holding, the Commonwealth Court reasoned that 77 P.S. § 512

> establishes a comparison of wages with similar employes *at the time of the injury*, rather than at a time prior or subsequent to the claimant's injury.... [T]he purposes of [77 P.S. § 512] is [sic] to offset the losses of injured workers, and to assure that the system of loss measurement remains calibrated. Setting the wage comparison at the time of injury assures a claimant that he or she will be made

whole. Additionally, claimants receiving partial disability benefits at this comparison rate cannot suffer a decrease in the amount of partial disability benefits received based on a wage cut affecting fellow employees, nor can they enjoy an increase in their disability payments if their fellow employees['] wages rise. If, however, the wage comparison were set at the time of the wage loss, a claimant's compensation could, potentially, vary greatly from his time of injury wage, thus, undermining the purpose of the Act.

*Id.* at 23–24, 547 A.2d at 1292. We agree with this reasoning.

Like the negotiated wage reduction in *McGraw–Edison,* the instant employer made an economic decision which decreased the total wages all of its employees received following the injury of Appellee. The elimination of overtime in the instant matter cannot be distinguished from the decreased hourly wage in *McGraw–Edison.* We hold that this economic decision on the part of the employer has no bearing on the calculation of partial disability benefits as set forth under section 512 of the Act. Because Appellee remains unable to return to her pre-injury position, continues to suffer residual impairment from her work injury, and is earning less than her pre-injury average weekly wage, she is entitled to partial disability benefits, and the amount of such benefits must be calculated according to the Act. *Cf. Diffenderfer v. Workmen's Compensation Appeal Bd. (Rabestos Manhatten Inc.),* 651 A.2d 1178 (Pa.Cmwlth.1994), *appeal denied,* 540 Pa. 642, 659 A.2d 561 (1995) ("[W]here the claimant is partially disabled and is gainfully employed in some capacity, but it is a position not financially equal to his time-of-injury earning power ... benefits are not suspended but are paid at the partial disability rate...."); *Mancini's Bakery v. Workmen's Compensation Appeal Bd. (Leone),* 155 Pa.Commw. 641, 625 A.2d 1308 (1993) ("A suspension of benefits is appropriate where a claimant has recovered from his work-related disability to the point where he can return to either his pre-injury job or another job with no loss of earnings...."); *USX Corp. v. Workmen's Compensation Appeal Bd. (Guthrie),* 132 Pa. Commw. 54, 571 A.2d 1112 (1990) ("A suspension is an ac-

knowledgement that some medical disability still exists and that benefits are suspended only because a claimant has returned to employment with wages that are at least as much as his/her preinjury wages.").

Appellant's argument that Appellee is precluded from receiving partial disability benefits under section 512 of the Act is flawed. As support, Appellant cites the language of section 772 which provides that

> where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772. However, this language is not applicable to Appellee because her compensation was not suspended as the result of her post-injury wages equalling or exceeding her pre-injury wages. To the contrary, her compensation was suspended pursuant to a supplemental agreement because her post-injury wages were less than her pre-injury average weekly wage. This agreement was entered into so that her light-duty position wages could be determined, allowing for the proper calculation of her partial disability benefits under section 512 of the Act.

Our holding also provides an incentive for an injured employee to return to work in some capacity although unable to perform the duties required by his or her pre-injury position. A contrary result would encourage an employee to remain out of work to receive total disability benefits which would not be affected by the economic decisions of the employer.

Accordingly, because Appellee continues to suffer from her work-related injury, is unable to resume her pre-injury position, and presently has an average weekly wage which is less than her pre-injury average weekly wage, she is entitled to partial disability payments. The Order of the Commonwealth Court is affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

While the employee was on leave as the result of bilateral, mild tendinitis caused by a work-related injury, the employer stopped offering overtime to its employees as a result of its financial situation. When the employee returned to work, she was paid the full salary she received prior to the injury and ensuing leave of absence, excluding the sum she *may* have made by working overtime. The majority, nevertheless, finds that the Workers' Compensation Act requires that an employer pay her an amount equal to her salary plus an amount equal to the overtime pay she may have made had the employer been financially able to offer her overtime. Because I believe that this holding leads to an absurd result, I must respectfully dissent.

Under the Workers' Compensation Act, benefits are awarded to employees who suffer a loss of earning power *as a result of a work-related injury. Joyce Western Corp. v. WCAB*, 518 Pa. 191, 195, 542 A.2d 990, 992 (1988). Therefore, workers' compensation benefits are not appropriate where the "claimant's loss of earnings was not occasioned by [her] injury." *Inglis House v. WCAB*, 535 Pa. 135, 142, 634 A.2d 592, 595 (1993), *citing Dugan v. WCAB*, 131 Pa.Commw. 218, 223–24, 569 A.2d 1038, 1041. Thus, when seeking reinstatement of benefits following a suspension, a claimant must establish that his earning power is adversely affected *"by his disability." Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 34 & 40, 584 A.2d 301, 305 & 308 (1990).

Because claimant is currently earning the same wage as she earned in her previous position prior to her injury, and because the loss of overtime pay is the result of the employer's financial situation and not of claimant's injury, she should not be entitled to reinstatement of partial disability benefits to compensate her for overtime payments which are not available to her either in her present limited duty position or in her

previous position were she able to return to it. Accordingly, I would reverse the order of the Commonwealth Court affirming the order of the Workmen's Compensation Appeal Board.