Isaiah **FONTAINE, Jr.,** Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILIP FOUNTAIN & SON and State Workmen's Insurance Fund),** Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 4, 1999.
Decided Oct. 19, 1999.

Christina J. Barbieri, Philadelphia, for petitioner.

Brittany T. Fenkel, Philadelphia, for respondent.

Before DOYLE, President Judge, and FRIEDMAN, J. and LEADBETTER, J.

FRIEDMAN, Judge.

Isaiah Fontaine, Jr., (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB), which affirmed a decision of a workers' compensation judge (WCJ) to modify Claimant's compensation benefits. We affirm in part, vacate in part and remand.

Claimant was employed as a working foreman for Philip Fountain & Son (Employer), whose business involved installing and removing vault doors. (WCJ's Findings of Fact, No. 15; Claimant's brief at 6.) On March 7, 1994, Claimant injured his neck and back as a result of a work-related motor vehicle accident. (WCJ's Findings of Fact, Nos. 1, 5.) Pursuant to a Notice of Compensation Payable under the Pennsylvania Workers' Compensation Act (Act),[1] Claimant began receiving benefits of $340.80 per week, based on an average weekly wage of $511.20. (WCJ's Findings of Fact, No. 1; WCJ's Conclusions of Law, Nos. 3, 4.)

On May 23, 1994, Claimant was examined by Employer's physician, Jonathan Rogers, M.D., a Board-certified orthopedic surgeon, who diagnosed Claimant as suffering from "cervical and lumbosacral strain." (WCJ's Findings of Fact, Nos. 4, 9.) Dr. Rogers was of the opinion that Claimant was capable of performing "half-days of his regular work" beginning on June 23, 1994, and could go back to "full duty" work beginning on July 23, 1994. (R.R. 51a–52a.) Dr. Rogers completed a physical capabilities evaluation of Claimant and subsequently approved Claimant for the "light-duty position of estimator/project supervisor," on the basis of a job description provided to him by Employer. (WCJ's Findings of Fact, No. 10; R.R. 76a.)

By letter dated July 19, 1994, Employer offered Claimant the "light-duty estimator/project supervisor position which was available as of July 25, 1994 and would have paid Claimant's pre-injury wage rate of $11.00 per hour." (WCJ's Findings of Fact, No. 12.) On July 25, 1994, Claimant did not report for work in the offered position. (WCJ's Findings of Fact, No. 16.) Instead, on that day, Claimant's wife, in a telephone call, advised Employer "that Claimant's doctor had not released him to return to work due to ongoing pain." (WCJ's Findings of Fact, Nos. 16, 22.)

As a result of Claimant's failure to report for the light-duty position offered, Employer filed a Petition to Suspend Compensation Benefits.[2] (WCJ's Findings of Fact, No. 2.) At the hearing before the WCJ, Claimant testified in his own behalf, contending that he could not return to work in the light-duty position because of "ongoing constant pain in his low back and legs, and headaches which make it difficult for him to stand and walk for any length of time, and to get in and out of an automobile." (WCJ's Findings of Fact, No. 20.)

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

**2.** Claimant thereafter filed duplicate Petitions to Review Compensation Benefits, seeking to amend the Notice of Compensation Payable to include a claimed work-related hernia. (WCJ's Findings of Fact, No. 3.) Those petitions were consolidated for hearing with Employer's Petition to Suspend Compensation Benefits. The WCJ determined that Claimant failed to prove that the hernia was work-related. (WCJ's Conclusions of Law, No. 5.) Claimant has not appealed that decision.

Claimant also claimed that the job was not within his vocational capabilities. (WCJ's Findings of Fact, No. 1.)

In opposition to Employer's petition, Claimant also presented the testimony of John Bowden, Jr., M.D., Board-certified in general practice, who was of the opinion that, although Claimant's pain level following the accident had been "reduced by approximately fifty percent," Claimant remained totally disabled. (WCJ's Findings of Fact, Nos. 25, 27.)

In support of its petition, Employer relied upon the testimony of Dr. Rogers. In addition, Employer's owner and president, Jeffrey Marriott, testified that the position offered to Claimant "required no lifting and involved the preparation of estimates or bids for projects in the tri-state area of Pennsylvania, New Jersey and Delaware, primarily in the Philadelphia and South Jersey areas." (WCJ's Findings of Fact, No. 13.) He explained that Claimant had the option of using his own vehicle or Employer's. (WCJ's Findings of Fact, No. 14.) Marriott further testified that, prior to Claimant's work injury, "Claimant had done some estimating and field supervisory work as a foreman." (WCJ's Findings of Fact, No. 15.) The WCJ accepted as credible Marriott's testimony regarding the duties and physical responsibilities of the estimator/project supervisor position. (WCJ's Findings of Fact, No. 40.) The WCJ also credited Marriott's testimony that Claimant had prior experience to enable him to perform the offered job. (WCJ's Findings of Fact, No. · 40.) In doing so, the WCJ rejected Claimant's contradictory testimony that, although he had worked for Employer for more than

twenty-five years, he had never done any estimating work. (WCJ's Findings of Fact, Nos. 21, 40.)

After reviewing the evidence, the WCJ concluded that Claimant's disability had changed and that he was vocationally and physically capable of performing the estimator/project supervisor job made available to him on July 25, 1994 at the rate of $11.00 per hour. (WCJ's Findings of Fact, No. 44; WCJ's Conclusions of Law, No. 2.) However, the WCJ also concluded that Claimant was not capable of working more than forty hours per week, although Claimant had done so previously. (WCJ's Findings of Fact, No. 44.) Consequently, the weekly wages for the estimator/project supervisor job were $71.20 per week less than Claimant's pre-injury job wages. Thus, the WCJ ordered that Employer's "Suspension Petition is GRANTED IN PERTINENT PART to the extent that Claimant's benefits are MODIFIED [3] as of July 25, 1994 to the partial disability rate of $47.47 per week," based on Claimant's inability to work more than forty hours per week. (WCJ's Conclusions of Law, No. 4; Order.) (Emphasis in original.) The WCAB affirmed. Claimant's appeal to this court followed.[4]

■ The law with respect to modification of benefits as a result of a claimant's refusal of a job offer is clear: "When an employer presents an offer for a job which is tailored to the claimant's abilities, the claimant must make a good faith effort to return to work; if a claimant refuses a valid job offer [his] benefits can be modified." *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 161 Pa.

---

**3.** Under section 413 of the Act, 77 P.S. § 772, a WCJ "may take appropriate action as indicated by the evidence presented upon the filing of any petition to modify, reinstate, suspend, or terminate a notice of compensation payable." *Strattan Homes, Inc. v. Workmen's Compensation Appeal Board (Hollis)*, 159 Pa. Cmwlth. 433, 633 A.2d 1250 (1993). Here, Claimant has not challenged the WCJ's authority to grant modification to Employer based on Employer's suspension petition.

**4.** Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether the necessary findings of fact were supported by substantial evidence. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996).

Cmwlth. 497, 637 A.2d 711, 713 (1994), citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). In *Kachinski*, our supreme court set out the procedures governing an injured employee's return to work:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 251–52, 532 A.2d at 380.

Claimant contends that the WCJ erred in modifying his benefits because Employer failed to meet its burden under the second prong of *Kachinski* in four respects. We discuss the alleged errors seriatim.

■ First, Claimant asserts that Employer's job offer letter[5] was defective under *Kachinski* because it failed to indicate that Claimant had been medically cleared for the job.[6] (Claimant's brief at 8, 13.) The requirement that a claimant be apprised of his medical clearance for a particular job category, such as light-duty work, is implicit in the second prong of *Kachinski*. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa. Cmwlth. 479, 568 A.2d 981, 984 (1989), appeal denied, 527 Pa. 656, 593 A.2d 426 (1990).

In response to Claimant's argument, Employer contends that, because the letter indicated that Claimant was "now able to work in part-time, light duty position," it adequately advised Claimant of his medical clearance for the offered job.[7] (Exhibit D–1, R.R. 40a.) Additionally, Employer notes that the letter stated that the "physical requirements of this position fall within your Physical Capabilities Evaluation submitted by the Comprehensive Diagnostic Center." (Exhibit D–1, R.R. 40a.)

■ Claimant counters that Employer presented no evidence that it supplied Claimant with a copy of the Physical Capacities Evaluation. (Claimant's brief at 14.) However, we agree with Employer that, under Pennsylvania law, Employer had no duty to provide Claimant with a copy of that form. (Employer's brief at 11.) The law also does not require that a job referral letter contain notice of medical clearance. What the law does require is that "Claimant be made aware that he is

---

5. Employer's job offer letter stated:
  I have been advised by the State Workmen's Insurance Fund that you are now able to work in a part-time, light duty position. Accordingly, I hereby offer you the position of Estimator/Project Supervisor. The physical requirements of this position fall within your Physical Capabilities Evaluation submitted by the Comprehensive Diagnostic Center.
  If you have any questions, or require additional information, please do not hesitate to contact me. If not, you may report to work on Monday, July 25, 1994 at 7:00 A.M. (Exhibit D–1, R.R. 40a.)

6. Claimant relies on *Hockenberry v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 672 A.2d 393 (Pa.Cmwlth. 1996), for this contention. However, that case does not address the issue of whether a claimant was properly notified of medical clearance. Indeed, in *Hockenberry*, we determined that the claimant had waived that argument by failing to present it to the WCAB. *See id.*, 672 A.2d at 396 n. 5.

7. We agree that the letter adequately advised Claimant of his medical clearance "to work in a **part-time**, light duty position." (R.R. 40a.) (Emphasis added.) The letter did not, however, advise Claimant that he had received medical clearance to work in a **full-time** position. *See* discussion *infra*.

medically sanctioned for an occupational category." *Lukens,* 568 A.2d at 984. Indeed, we have held that communication of medical clearance is "vital. . . ." *Id.* Thus, although an employer is not required to provide the medical clearance notice *in the job referral letter,* the employer "must prove that Claimant was cognizant of his medical clearance. . . ." *Id.*

In *Lukens,* we determined that a physical capacities form completed by a physician satisfies the medical clearance requirement so long as the employer proves that the claimant has been made aware of it. In that case, we determined that the employer failed to prove that the claimant was "cognizant of his medical clearance," *id.,* 568 A.2d at 984, because the claimant testified credibly that he was unaware of his medical clearance, because the physician did not testify that he had informed the claimant of his clearance and because the employer had not made the claimant aware of the physical capacities form. Here, unlike the situation in *Lukens,* Employer's letter made Claimant aware of both his medical clearance for part-time, light-duty work and the Physical Capabilities Evaluation recognizing the offered job as within Claimant's physical capabilities. Accordingly, Employer met its burden of proving that Claimant was cognizant of his medical clearance to work in a part-time position. The record, however, is devoid of evidence that Claimant was cognizant of his medical clearance to work in a full-time position.

Second, Claimant argues that Employer's job referral letter was defective under the second prong of *Kachinski* because it failed to indicate the occupational category or physical demands of the job. (Claimant's brief at 8, 13.) *Kachinski* requires that an employer prove that the job is within the occupational category for which the claimant has received medical clearance. Here, Employer's job referral letter satisfied that requirement by clearly identifying the offered job as "light duty." (Exhibit D–1, R.R. 40a.)

*Kachinski* also requires that an employer provide the claimant with a general job classification and a basic description of the job. *Four–Way Construction Co. v. Workmen's Compensation Appeal Board (Snyder),* 113 Pa.Cmwlth. 235, 536 A.2d 873 (1988). However, where the claimant already knows the job requirements, the employer need not communicate them to the claimant in the job referral letter. *McConway & Torley Corp. v. Workmen's Compensation Appeal Board (Campbell),* 677 A.2d 381 (Pa.Cmwlth.), *appeal denied,* 546 Pa. 671, 685 A.2d 548 (1996). Here, the WCJ accepted as credible the testimony of Employer's owner and president that, prior to his work-related injury, Claimant had done some estimating and field supervisory work, rejecting Claimant's testimony to the contrary. (WCJ's Findings of Fact, Nos. 15, 21, 40.) Because Claimant already knew what the job of estimator/project supervisor entailed, Employer's failure to describe the work in its job referral letter did not run afoul of the *Kachinski* requirement.

Third, Claimant contends that Employer's evidence at the hearing regarding the physical aspects of the job was insufficient for the WCJ to make a determination that the job was within Claimant's physical capabilities. (Claimant's brief at 9–12.) We disagree. Employer's owner and president credibly testified this was a light-duty position, requiring no lifting; rather, the job involved the preparation of estimates for work projects and also involved driving a car to get to the job sites. (WCJ's Findings of Fact, Nos. 13, 14.) Additionally, Dr. Rogers approved the offered job for Claimant. (WCJ's Findings of Fact, No. 10.) Thus, substantial evidence supports the WCJ's conclusion that the estimator/project supervisor position was within Claimant's physical capabilities.

Fourth, Claimant argues that Employer failed to prove that the estimator/project supervisor job was within

Claimant's vocational abilities. A job is not considered "actually available" to a claimant unless "it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations...." *Kachinski*, 516 Pa. at 251, 532 A.2d at 379. Thus, a job that is not within a claimant's vocational abilities, i.e., one which a claimant lacks the ability to perform, does not trigger a claimant's duty under *Kachinski* to follow through on the job in good faith. Here, Claimant essentially contends that he lacks the background or experience to perform the offered job. However, based on the testimony of Employer's owner and president, which the WCJ found credible, Employer demonstrated that Claimant had sufficient experience to perform the job. (WCJ's Findings of Fact, No. 15.) Therefore, we disagree with Claimant that Employer did not meet its burden of proof in this regard.

██ In sum, we find that Employer's letter offering Claimant part-time work was satisfactory under *Kachinski*. Thus, Claimant's failure to follow through on Employer's job offer of part-time work was not in good faith, and Employer was entitled to a modification of compensation benefits based on Claimant's refusal of Employer's valid job offer of part-time work.

However, the WCJ based his modification of Claimant's benefits upon a job offer of full-time, rather than part-time work.

In calculating the amount of the modification of benefits, the WCJ based his calculations on Claimant's working a forty-hour[8] workweek in the offered job.[9]

Because Employer did not establish the number of hours per week involved in its offer of part-time work to Claimant, the record is deficient. Accordingly, we vacate the WCAB's decision to the extent that it concludes that Employer's job offer letter properly informed Claimant of his medical clearance to work forty hours per week and to the extent that it concludes that, as of July 25, 1994, Employer offered, or made available to, Claimant a forty hour per week job. We remand to the WCAB with instructions that it remand this case to the WCJ to take additional evidence, as needed, and to make additional findings of fact and conclusions of law regarding the number of hours that Employer intended to make available to Claimant for part-time work as an estimator/project supervisor as stated in Employer's job offer letter.

## ORDER

AND NOW, this 19th day of October, 1999, the order of the Workers' Compensation Appeal Board (WCAB), dated January 4, 1999, is hereby affirmed to the extent that it grants Philip Fountain & Son (Employer) a modification of Isaiah Fontaine, Jr.'s (Claimant) benefits. The order is

8. We note that, under the Fair Labor Standards Act, 29 U.S.C. § 207, employers may not employ employees more than forty hours per week without paying overtime pay at the rate of one and a half times the employee's regular rate of pay. Thus, we consider a forty-hour workweek to be full-time work. That is not to say, however, that a workweek consisting of fewer than forty hours may not also constitute full-time employment. *See, e.g., Bloomsburg University v. Unemployment Compensation Board of Review*, 692 A.2d 586 (Pa.Cmwlth.1997) (holding that, in the context of the employment relationship at issue in that case, 37.5 hours per week was full-time employment).

9. Moreover, as Claimant points out, Employer presented no evidence that a forty-hour a week job was available, as the plain and unambiguous language of Employer's letter offered Claimant only a part-time position. Indeed, the WCAB acknowledged that Employer's letter offered Claimant a "**part-time**" position. (WCAB's decision at 5, 8.) Part-time work is work "other than normal full-time work ... which is ordinarily performed for less than the total number of hours or days customarily worked in the business, occupation or industry." *Bloomsburg University*.

vacated to the extent that it concludes that Employer's job offer letter properly informed Claimant of his medical clearance to work forty hours per week and to the extent that it concludes that, as of July 25, 1994, Employer offered, or made available to, Claimant a forty hour per week job. We remand to the WCAB with instructions that it remand this case to the WCJ to take additional evidence, as needed, and to make additional findings of fact and conclusions of law regarding the number of hours that Employer intended to make available to Claimant for part-time work as an estimator/project supervisor as stated in Employer's job offer letter.

Jurisdiction relinquished.

Judge LEADBETTER dissents.