# CITY OF PHILADELPHIA, Petitioner,

## v.

# PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 12, 1996.

Decided Sept. 30, 1996.

Albert L. D'Attilio, Assistant City Solicitor, for Petitioner.

Michael Hardiman, Assistant Chief Counsel, for Respondent.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

FRIEDMAN, Judge.

The City of Philadelphia (City) appeals from an order of the Pennsylvania Human Relations Commission (Commission) requiring the City to cease and desist from discriminating on the basis of age against Eileen Tiano (Applicant) and others similarly situated with respect to employment as police officers.

In August 1987, when Applicant was forty-four years of age, she applied for a police officer position with the City. In November 1987, Applicant completed a written examination for the job and received a fairly high test score of 93.84 plus ten points for veteran's preference. The City placed Applicant on an eligibility list but, subsequently, notified her that she was not eligible because of her age.

As a result, the City would not permit Applicant to complete the three remaining steps: a medical examination, a psychiatric examination and a background investigation. If Applicant had successfully completed those steps, her rank on the eligibility list would

have been 228.5. The City stipulated that, with that rank, the City would have offered, and Applicant would have accepted, a position as a police officer.

On March 3, 1989, Applicant filed a complaint with the Commission, alleging that the City had discriminated against her because of her age by refusing to hire her as a police officer. On March 30, 1989, the City filed a motion to dismiss the complaint, contending that the federal Age Discrimination in Employment Act (ADEA),[1] which, under certain circumstances, allows cities to lawfully refuse to hire police officers on the basis of age, preempts the Pennsylvania Human Relations Act (PHRA).[2] On February 28, 1990, the Commission denied the City's motion and ordered Commission staff to proceed with its investigation of the complaint.

On July 7, 1992, the Commission notified Applicant and the City that probable cause existed to credit the complaint's allegations. When the parties attempted unsuccessfully to resolve the matter by conference, conciliation and persuasion, the Commission scheduled a public hearing on the matter.

Based on the stipulations of fact and the evidence presented, the Commission concluded that: (1) the City's action violated the PHRA; (2) the ADEA did not preempt the PHRA; and (3) what is commonly called the Political Subdivision Tort Claims Act (PSTCA)[3] does not render the City immune from liability under the PHRA. Thus, the Commission awarded Applicant damages.

■ On appeal,[4] the City argues that the Commission erred in concluding that section 623(j) of the ADEA, 29 U.S.C. § 623(j),[5] did not preempt the PHRA with respect to the establishment of age limitations for hiring law enforcement officers.

■ Article VI of the United States Constitution provides that the laws of the United States shall be the supreme law of the land, anything in the constitution or laws of any state to the contrary notwithstanding. U.S. Const. Art. VI, cl. 2. Our consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the states are *not* to be superseded by federal law *unless* that is the clear and manifest purpose of Congress. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Thus, the ultimate touchstone of any preemption analysis is the intent of Congress, which may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Id.*

Section 623(j) of the ADEA, which took effect on January 1, 1987 and automatically terminated on December 31, 1993, provided in relevant part as follows:

(j) It shall not be unlawful for an employer which is ... a political subdivision of a State ... to fail or refuse to hire ... any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a ... law enforcement officer and the individual has attained the age ... *in effect under applicable State or local law on March 3, 1983,*[6] and

(2) pursuant to a bona fide hiring ... plan that is not a subterfuge to evade the purposes of this Act.

29 U.S.C. § 623(j) (emphasis added). Clearly, by enacting section 623(j), Congress in-

---

1. 29 U.S.C. §§ 621–634.

2. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2.

3. Sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

4. Our scope of review is limited to determining whether the Commission violated constitutional rights, committed an error of law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. The provision was originally codified as 29 U.S.C. § 623(i) and subsequently recodified as 29 U.S.C. § 623(j).

6. Rule 11.17 of the City's Civil Service Regulations set the maximum hiring age for a police officer at thirty-five. (R.R. at 9a.) When Applicant applied to become a police officer in August 1987, Applicant was forty-four years old. Thus, *if* Rule 11.17 is a state or local law in effect on March 3, 1983, Applicant had attained the age of hiring under section 623(j) of the ADEA.

tended to permit a seven year period within which cities could lawfully refuse to hire someone as a police officer because of age pursuant to a state or local "law" in effect on March 3, 1983.[7]

Here, the City refused to hire Applicant based on Rule 11.17 of the City's Civil Service Regulations, which provided that the maximum age for applicants for the position of police officer would be thirty-five years of age. (R.R. at 9a.) However, the Commission determined that a civil service regulation was *not* a state or local "law." (Commission's op. at 18.) We believe that the Commission erred in this regard.

■ Words and phrases in a statute shall be construed according to their common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903. The term "law," in its generic sense, is a body of rules prescribed by a controlling authority, and having binding legal force. Black's Law Dictionary 795 (5th ed. 1979). Here, because the City's civil service regulation is a rule promulgated by the City, and, because it has the force of law, it is a local "law."[8]

However, it is not clear from the record whether Rule 11.17 was in effect on March 3,

1983. Indeed, the City does not deny that it failed to present any evidence on that issue. Nevertheless, the City argues that the trial court should have taken judicial notice of that fact. We disagree.

■ Matters of judicial notice have three material requisites: (1) the matter must be a matter of common and general knowledge; (2) it must be well and authoritatively settled; and (3) it must be known within the limits of the jurisdiction of the court. If there is uncertainty with respect to a matter in question, the court will not take judicial notice. 8 Standard Pennsylvania Practice 2d § 49:68 (1982).

■ We do not believe that whether Rule 11.17 was in effect on March 3, 1983 is a matter of common and general knowledge, or that such would be known within the jurisdiction of the Commission. Thus, we cannot say that the Commission erred in failing to take judicial notice. Because the City failed to prove that Rule 11.17 was in effect on March 3, 1983, section 623(j) of the ADEA cannot preempt the PHRA here because it simply does not apply.

The City also argues that it is immune from liability in this case under the PSTCA.[9] We cannot agree.

---

7. In *E.E.O.C. v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), the United States Supreme Court upheld the 1974 amendments to the ADEA; these amendments included state and local governments within the definition of "employer." In response to a reaction from state and local governments, Congress enacted a grace period during which the hiring of law enforcement officers would be exempted from ADEA coverage *if* carried out in accordance with applicable state or local age restrictions on the books when the *Wyoming* decision was handed down. *See Roche v. City of Chicago*, 24 F.3d 882 (7th Cir.1994).

8. Moreover, even if we suppose that the term "law" in section 623(j) is susceptible to more than one meaning, the result is the same. Indeed, the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. When the words of a statute are not explicit but, rather, are ambiguous, i.e., capable of more than one meaning, the intention of the legislature may be ascertained by considering, among other things, the circumstances under which it was enacted. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921.

According to Senator Wendell Ford of Kentucky, one of the primary architects of the final compromise version of section 623(j), Congress intended:

[T]o provide relief to those jurisdictions which were forced to respond to [*EEOC v. Wyoming* ], while at the same time ensuring that *no lesser discrimination protection* will be provided for these workers than what was in effect at the time [*EEOC v. Wyoming* ] was decided.

132 Cong.Rec. S16850–52 (daily ed. October 16, 1986) (emphasis added).

In other words, Congress enacted section 623(j) to freeze for seven years the level of discrimination that existed with respect to law enforcement officers as of March 3, 1983. *See Gately v. Commonwealth of Massachusetts*, 2 F.3d 1221 (1st Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994). Thus, *if* the City's civil service regulation existed prior to March 3, 1983 and had the force of law at that time, Congress intended that it remain in effect for seven more years.

9. Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, states as follows:

Except as otherwise provided in this subchapter, no local agency shall be liable for any

In *Mansfield State College v. Kovich,* 46 Pa.Cmwlth. 399, 407 A.2d 1387 (1979), this court held that Act 152, the 1978 statute which was enacted in response to our supreme court's reaffirmance of sovereign immunity in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), did *not* preclude an action under the PHRA. In reaching that conclusion, we explained:

> [The PHRA] affords the appellee a private right of enforcement against her employer for alleged discriminatory practices. She is a public employee, of course, but the legislature obviously meant to allow an aggrieved public employee to bring an action against ... the Commonwealth, for it included the Commonwealth under the term "employer" in [the Act]. The appellee's claim therefore is not one sounding in trespass and thereby affected by Act 152, the recent enactment as to sovereign immunity, but rather it is a statutorily created cause of action against the Commonwealth as an "employer", not the Commonwealth as a sovereign entity.

*Mansfield State College,* 407 A.2d at 1388.

■ Likewise, here, because the legislature included "any political subdivision" in the PHRA's definition of "employer," the legislature clearly intended to permit a public employee to bring a *private* action against a political subdivision as an "employer." As stated above, this is distinct from an action against a political subdivision as a "governmental unit." Thus, like the sovereign immunity provisions of the Judicial Code,[10] the PSTCA does not prevent an action under the PHRA. *See Verde v. City of Philadelphia,*

damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.
Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542, sets forth certain exceptions to governmental immunity, which are not applicable here.

10. Sections 8521–8528 of the Judicial Code, 42 Pa.C.S. §§ 8521–8528.

1. The federal statute allows the head of any agency to determine and fix a maximum age limit for an original appointment to any law enforcement or firefighter position. "Law enforcement officer" is defined in 5 U.S.C. § 8331(20) as "an

862 F.Supp. 1329 (E.D.Pa.1994) (applying *Mansfield State College* to the PSTCA).

Accordingly, we affirm.

## ORDER

AND NOW, this 30th day of September, 1996, the order of the Pennsylvania Human Relations Commission, dated July 24, 1995, is affirmed.

PELLEGRINI, Judge, concurring.

I join the majority opinion, but write separately to point out that the federal government would refuse to hire Eileen Tiano, the Applicant, on the basis of her age, because it believes as a matter of policy that federal law enforcement officers should be no more than 35 years of age when hired. *See* 5 U.S.C. § 3307(d).[1]

employee, the duties of whose position are primarily the investigation, apprehension or detention of individuals suspected or convicted of offenses against the criminal laws of the United States ..." The age generally applied for new hires to federal law enforcement positions is 35 years old, the same age determined appropriate by the City of Philadelphia. *See Benford v. Frank,* 943 F.2d 609 (6th Cir.1991); *Patterson v. United States Postal Service,* 901 F.2d 927 (11th Cir.1990); *Stewart v. Smith,* 673 F.2d 485 (D.C.Cir.1982). A similar age limitation is applicable to applicants to the federal armed services. 32 C.F.R. 571.2.