**Lawrence KASHUBA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HICKOX CONSTRUCTION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 24, 1998.

Decided June 4, 1998.

Mary Anne O'Malley, Pittston, for petitioner.

Thomas R. Nealon, Scranton, for respondent.

Before McGINLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Lawrence Kashuba (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed a decision by a workers' compensation judge (WCJ) and dismissed Claimant's petition for review. We affirm.

Claimant performed carpentry work for Hickox Construction (Employer) from April of 1987 until he sustained a work-related injury on May 22, 1992. Employer accepted liability through an amended Notice of Compensation Payable (NCP), which reflected an average weekly wage of $338.45, calculated at $8.50 per hour. Claimant filed a review petition alleging that the NCP does not accurately reflect his wages. Employer filed an answer denying the allegation and the case was assigned to a WCJ.

Claimant testified that he and Richard Hickox, owner of Hickox Construction and Claimant's friend, had an oral agreement whereby each performed services for the other at lower than market rates. Claimant received payment at the rate of $8.50 per hour for the hours of services he rendered in excess of the hours of services he received.

Claimant argued that the rate of $8.50 per hour was not an accurate figure on which to base his rate of compensation. Claimant asserted that his compensation rate should be calculated using an hourly rate of $16.36, the normal rate of pay for a union carpenter. Claimant presented the testimony of Joseph Hammond, a certified public accountant who has been Claimant's financial advisor since 1984. Hammond recalculated Claimant's average weekly wage to be $651.44, based upon the union rate of pay and Claimant's years of experience as a carpenter.

Claimant also presented a statement from Richard Hickox confirming the working arrangement between himself and Claimant. (Claimant's Exhibits Nos. 4, 5, and 6.) Hickox further indicated that he agreed to a rate of $15.00 per hour for his services to Claimant, rather than his normal billing rate of approximately $23.00 per hour, and that Claimant had agreed to a lower hourly rate of $8.50 per hour for his services to Employer.

Employer presented a report from J. Paul Murphy, also a certified public accountant. Murphy stated that $8.50 per hour represented the actual market value of Claimant's services, opining that it was a common practice for carpenters to accept work at below the current labor rate to fill in available time. Murphy also stated that participants in a bartering arrangement are required to report the value of bartered services as gross income according to Internal Revenue Service regulations. He noted that the parties in this case did not report the value of the allegedly bartered services on their income tax returns.

The WCJ accepted Claimant's testimony as credible and persuasive concerning his agreement with Employer (a reduction in his rate of pay in exchange for the value of services received). The WCJ found that the hourly wage of $8.50 does not accurately reflect the total wages paid to Claimant. The WCJ accepted the testimony of both certified public accountants as credible, but not persuasive, concerning the actual market value of Claimant's services. He also noted that Claimant was not a union carpenter. The WCJ took judicial notice of statistics provided by the Bureau of Employment Security (Bureau) that a carpenter in the Scranton area would have earned between $10.86 and $13.38 per hour, depending upon experience.

The WCJ determined that the employment agreement here (reduced labor rate exchanged for services) is analogous to a situation wherein room and board are provided by an employer. Where room and board are provided to an employee in exchange for a lower rate of pay, the room and board is

considered part of the employee's total wages. Section 309(e) of the Workers' Compensation Act (Act).[1] The dollar value is determined by the commercially reasonable value for room and board. The WCJ found that the fair market value of Claimant's services was $13.38 per hour, based on Bureau statistics and Claimant's level of experience.

The WCJ granted Claimant's petition for review. And, although the WCJ found Employer's contest reasonable, the WCJ awarded Claimant litigation costs incurred for the prosecution of the petition.

Employer appealed the recalculation to the Board, arguing that the WCJ's findings were not supported by substantial evidence and that the WCJ committed an error of law. The Board concluded that the agreement between Claimant and Employer for the exchange of services constituted illegal activity, which the Board would not condone. The Board held that the average weekly wage as reported to the taxing authorities governs as a matter of law and that Claimant's weekly wage was $8.50 per hour. The Board reversed the WCJ's decision on this basis and did not address the other issues Employer raised on appeal.

Claimant appealed to this Court, which, in a memorandum opinion dated February 28, 1997, held that wages are not limited to those wages reported to the taxing authorities.[2] Citing *Arthur Shelley Trucking v. Workmen's Compensation Appeal Board (Bregman)*, 114 Pa.Cmwlth. 138, 538 A.2d 604 (1988), the Court held that the fact that a Claimant does not accurately report his income on a federal tax return is not, as the Board claimed, dispositive of the issue of whether those monies should be included as wages to calculate a claimant's compensation rate. The Court reversed the Board's decision and remanded the case to the Board for

consideration of Employer's remaining issues.

On remand, the Board observed that the WCJ's finding regarding the terms of the agreement between the parties was supported by substantial evidence and could not be disturbed. However, the Board held that the WCJ erred by taking judicial notice of statistics provided by the Bureau. The Board further concluded that, without those statistics, there is no evidence of record supporting the WCJ's finding that the fair market value of Claimant's services was $13.38 per hour. Accordingly, the Board reversed the WCJ's decision.[3] However, the Board did not address the issue of whether the terms of the bartering agreement should be considered for purposes of determining Claimant's average weekly wage.[4]

On appeal from the Board's October 31, 1997 decision, Claimant argues that the petition to review must be granted, as there is substantial evidence proving that the NCP does not accurately reflect Claimant's pre-injury wage. Claimant maintains that the rules of evidence are relaxed in workers' compensation proceedings and asserts that the WCJ's judicial notice of statistics of another Department of Labor and Industry agency is akin to a court's taking judicial notice of its own records.

Employer first argues that Claimant underreported his income and that granting Claimant's petition would result in an unconscionable windfall to Claimant. Employer acknowledges that Section 309(e) of the Act indicates that the average weekly wage may include non-monetary compensation, such as board and lodging, but argues that the Act presumes that the value of such services be reported to the taxing authorities. We rejected this argument in our decision of February 28, 1997; compensation as reported to

1. Act of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 582(e).

2. *Kashuba v. Workmen's Compensation Appeal Board (Hickox Construction),* (No. 2525 C.D. 1996, filed February 28, 1997).

3. The Board also reversed the award of litigation costs, on the basis that the matter had not been resolved in Claimant's favor.

4. Had the Board concluded that the legislature did not intend this type of non-monetary compensation to be included as "wages," reversal would have been proper. Had the Board reached the contrary conclusion, a remand would have been necessary to determine Claimant's average weekly wage based on the remaining evidence of record.

the taxing authorities is not dispositive of the determination of a workers' compensation claimant's average weekly wage.

Employer also argues that the WCJ erred in taking judicial notice of Bureau statistics. We agree. Judicial notice is intended to avoid the necessity of formally introducing evidence in those limited circumstances where the fact sought to be proven is so well known that evidence in support of that fact is unnecessary. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 142 Pa.Cmwlth. 176, 597 A.2d 182 (1991), *rev'd on other grounds*, 534 Pa. 327, 632 A.2d 1302 (1993). Judicial notice is properly taken where the fact is of common and general knowledge, is authoritatively settled, and is known within the limits of the court's jurisdiction. *City of Philadelphia v. Pennsylvania Human Relations Commission*, 684 A.2d 204 (Pa.Cmwlth.1996). If there is uncertainty with respect to a fact in question, a court will not take judicial notice. *Id.* See also *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 468 A.2d 465 (1983), holding that the trial court erred in determining the value of an automobile based on judicial notice of its Redbook value, where the value of the particular automobile was not an incontestable fact or matter of common knowledge. Clearly, judicial notice of Bureau statistics was not appropriate for determining the market value of Claimant's services.

However, as the Board observed, the WCJ's findings regarding the nature of the bartering arrangement between Claimant and Employer are supported by substantial evidence. The Board failed to address the question of whether the WCJ's findings necessitate, as a matter of law, a recalculation of Claimant's average weekly wage for purposes of compensation. Considering the history of this case and the likelihood of a further appeal, we conclude that judicial economy is best served by a disposition of that issue in the present appeal.

In pertinent part, Section 309(e) of the Act provides as follows:

> The terms **"average weekly wage"** and **"total wages,"** as used in this section, shall include board and lodging received from the employer, and gratuities reported to the United States Internal Revenue Service by or for the employe for Federal income tax purposes, but such terms shall not include amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such terms include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor, nor shall such terms include fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents: Provided, however, That the amount of any bonus, incentive or vacation payment earned on an annual basis shall be excluded from the calculations under clauses (a) through (d.2). Such payments if any shall instead be divided by fifty-two and the amount shall be added to the average weekly wage otherwise calculated under clauses (a) through (d.2).

77 P.S. § 582(e). Claimant argues that this language, which requires that the value of board and lodging be included in the computation of wages, supports the conclusion that the average weekly wage is to be determined by considering wages from all sources, both monetary and non-monetary. Claimant argues that Section 309(d) of the Act specifically states that the calculation of the average weekly wage "shall be the wage most favorable to the employee," 77 P.S. § 582(d), and that the Act must be liberally construed.

It is well settled that the Act is remedial in nature and intended to benefit the worker, and the courts are mindful that the Act must be liberally construed in order to effectuate its humanitarian objectives. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). Borderline interpretations of the Act are to be construed in the injured party's favor, *id.*, and any restriction of the Act's application should be narrowly construed where the intent of the legislature is not

clearly expressed. *Rite Care Resources v. Workmen's Compensation Appeal Board (Davis)*, 154 Pa.Cmwlth. 336, 623 A.2d 917 (1993).

However, these concepts of statutory interpretation are resorted to only when the language of the statute is ambiguous. *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983). When the words of a statute are clear and free from all ambiguity, the court will not disregard the letter of the law under the pretext of pursuing its spirit. *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.)*, 541 Pa. 148, 661 A.2d 1355 (1995).

In *Adams v. Workmen's Compensation Appeal Board (Frank D. Suppa Logging)*, 107 Pa.Cmwlth. 30, 527 A.2d 625 (1987), the claimant (a logger) received remuneration delineated as "equipment rental" in addition to a fixed weekly wage. The *Adams* court observed that Section 309(e), which sets forth the types of remuneration to be included in computing the average weekly wage, does not refer to payments for the rental of equipment. Accordingly, the *Adams* court concluded that the legislature intended to exclude such payments from the wage computation.[5]

In *Arthur Shelley Trucking*, the court relied on the express language of Section 309(e) that board and lodging must be included as wages for purposes of compensation. The court rejected the employer's argument that monies advanced to the claimant for meals and lodging were reimbursement for expenses incurred, concluding that the employer's characterization of monies paid to the claimant cannot defeat the express legislative mandate. The court also distinguished *Adams* on the grounds that a specific legislative declaration was absent in that case.

■ We recognize that, as a purely factual matter, the NCP does not accurately reflect the value of Claimant's services. However, the Act simply does not provide that non-monetary remuneration other than board and lodging shall be included in the calculation of a claimant's average weekly wage. This Court will not supply an omission in a statute even if it appears that the omission resulted from the legislature's mere inadvertence or failure to foresee or contemplate a case in question. *Armco, Inc. v. Workmen's Compensation Appeal Board (Mattern)*, 542 Pa. 364, 667 A.2d 710 (1995) (quoting *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983)). *See also Berkowitz v. Philadelphia Chewing Gum Corp.*, 198 F.Supp. 351 (E.D.Pa.1961) (court cannot extend the provisions of the Act nor can it create rights and duties not given or imposed by the Act).

■ We conclude that the WCJ erred in considering the value of services exchanged between Claimant and Employer in the calculation of Claimant's average weekly wage. Accordingly, we affirm the order of the Board dismissing Claimant's petition for review.[6]

### ORDER

NOW, June 4, 1998, the order of the Workers' Compensation Appeal Board, at No. A95–3287, dated October 31, 1997, is affirmed.

---

5. In addition, the court noted that the claimant voluntarily entered into the agreement, as it was more profitable for him to supply his own equipment at a high per diem rental rate than to receive wages.

6. An appellate court may affirm an order if the order is correct for any reason, regardless of the reasons given by the tribunal whose order is under review. *Morgan Signs, Inc. v. Department of Transportation*, 676 A.2d 1284 (Pa.Cmwlth. 1996).