# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazon.com Services, LLC        :
and Sedgwick CMS,        :
          Petitioners     :
       :
        v.          : No. 381 C.D. 2024
       : SUBMITTED: April 8, 2025
Timothy R. Carlson (Workers'     :
Compensation Appeal Board),     :
         Respondent    :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**               **FILED: May 7, 2025**

Amazon.com Services, LLC and Sedgwick CMS (collectively, Employer) petition for review of an order of the Workers' Compensation Appeal Board that affirmed a decision of a Workers' Compensation Judge (WCJ) granting the claim petition and penalty petition filed by Claimant, Timothy R. Carlson.[1] Due to concurrent employment with local tavern Shady McGrady's (Concurrent Employer), we conclude that Claimant was entitled to temporary partial disability benefits but not temporary total disability benefits.[2] Accordingly, we affirm in part; reverse in part; and remand for a recalculation of Claimant's average weekly wages

---

[1] The Board also affirmed the WCJ's denial of Employer's termination petition, which Employer is not challenging on appeal. As for the Board's entire decision, the Chairman of the Board concurred in the result only. 3/07/2024 Bd. Decision at 10.

[2] Concurrent employment is that which a claimant engaged in at the time of injury. *Freeman v. Workmen's Comp. Appeal Bd. (C.J. Langenfelder & Son)*, 527 A.2d 1100 (Pa. Cmwlth. 1987).

(AWW) to include the wages that he earned with Concurrent Employer and a recalculation of the amount due and owing on the penalty petition.

For approximately 2½ years, Claimant worked as a fulfillment center associate for Employer locating items and filling boxes throughout the day. 6/16/2023 WCJ Decision, Finding of Fact (F.F.) No. 6(a). He manually lifted items weighing 70-80 pounds. *Id.* In April 2022, he placed a 10- to 15-pound package on the waist-level belt, pushed it from his left to his right, and experienced a sharp pain and pulling sensation on the center-left side of his neck. After reporting to his supervisor, Claimant went to Employer's in-house medical facility where he was told to return to work after being given Icy Hot and Advil. *Id.* Experiencing too much pain to do so and planning to leave in order to see his doctor, he was sent to Concentra. Concentra examined him, imposed light-duty restrictions, and told him to return to work the next day. F.F. No. 6(b). When Claimant woke up in pain, Concentra advised him to wait for his one-week follow-up appointment. He did not return to work in the week following his injury. At his follow-up appointment, Concentra imposed sedentary-duty restrictions. When Claimant provided those restrictions to Employer, it advised him that the only available positions were on night shift. When Claimant responded that he was unable to work night shift, Employer advised him to take a leave of absence. He was unable to apply for a leave on Employer's application. *Id.* When Claimant returned to Concentra two weeks later, it continued to recommend sedentary-duty restrictions. F.F. No. 6(c).

In the interim, Employer terminated Claimant's employment for job abandonment. Claimant acknowledged that he had a few in-person discussions and corresponded with a person in human resources, but he did not call off on a daily

2

basis. F.F. No. 6(c). As for Concentra, Claimant did not return a third time but agreed that it never took him off work completely.

Even though Claimant did not return to work for Employer, he resumed working his second job with Concurrent Employer. Before his work injury, he worked there five to seven nights per week for a few hours each night providing security and checking identification cards. F.F. No. 6(f). Afterwards, he worked three nights per week for four hours each night. F.F. No. 7(b). Employer presented surveillance of him working there, but it revealed only that the job was slightly more involved than checking identification cards and did not establish that he was engaged in physically demanding work. F.F. No. 11(a). The WCJ credited Claimant's testimony that it was not physically demanding and that he returned to the same job that he had done before his work injury. *Id.* In addition, even though Claimant's medical expert, Miteswar Purewal, MD, did not know about the concurrent employment, the WCJ found that working for no more than 4 to 5 hours per night and lifting no more than 15 pounds was consistent with Claimant's restrictions. F.F. No. 9(f).

In May 2022, Claimant filed a claim petition and a penalty petition. In the claim petition, he alleged that he sustained a neck injury in April 2022 in the course of his employment with Employer and described the work injury as "injuries to the cervical spine including but not limited to sprains and strains and intervertebral disc displacement." 5/11/2022 Claim Pet. at 1; Reproduced Record (R.R.) at 4a. He sought temporary total disability benefits from April 22, 2022 onward, medical benefits, and counsel fees. He denied having any additional employment at the time of injury. *Id.* at 2; R.R. at 5a. In the penalty petition, he alleged that Employer

3

violated the Workers' Compensation Act[3] by failing to investigate the claim and failing to issue appropriate Bureau of Workers' Compensation documents in a timely manner. F.F. No. 1.

In June 2022, Employer issued a medical-only Notice of Temporary Compensation Payable (NTCP) describing the work injury as a "left side of neck disc strain or tear." F.F. No. 2. In January 2023, it filed a termination petition alleging that Claimant had fully recovered from the work injury as of August 19, 2022. F.F. No. 3.

The WCJ granted Claimant's petitions and denied Employer's petition.[4] In granting the claim petition, the WCJ accepted the testimony of Dr. Purewal that Claimant sustained a work injury in the nature of post-traumatic cervicalgia due to irritation and inflammation of the nerve root at C6-7; that he required ongoing treatment and had work restrictions for that injury; and that he was not fully recovered. F.F. No. 11(c). The WCJ found that Claimant provided Employer with his work restrictions but that it failed to make work available to him on his regular shift. As for the purported "job abandonment" for which Employer terminated Claimant, the WCJ found that it was due only to Employer's failing to accommodate him with a job on his regular shift. F.F. No. 11(a). Calculating Claimant's AWW as $546.42 and weekly compensation rate as $491.78, the WCJ directed Employer to pay Claimant temporary total disability benefits in the amount of $491.78 per week beginning April 21, 2022, and onwards. In addition, the WCJ directed Employer to pay for reasonable and necessary medical treatment causally related to

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[4] In denying the termination petition, the WCJ accepted the opinion of Claimant's expert that Claimant was not fully recovered and rejected the opinion of Employer's expert to the extent that it conflicted with that of Claimant's expert. F.F. No. 11(b)-(c).

the work injury, with statutory interest on all past-due amounts. As for the penalty petition, the WCJ directed Employer to pay a penalty equal to 10% of the past-due temporary total disability benefits and the statutory interest payable thereon.

The Board affirmed and Employer's petition for review to this Court followed.[5]

In a claim petition, the claimant has the burden of proving all of the elements necessary to support an award including the existence of a work-related injury resulting in disability and its duration. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592 (Pa. 1993). Disability is a term synonymous with the loss of earning power; it does not refer to physical impairment. *See Kmart v. Workers' Comp. Appeal Bd. (Williams)*, 771 A.2d 82, 85 (Pa. Cmwlth. 2001). Once the claimant meets his burden, the employer has the burden of establishing that other work is available to the claimant which he is capable of obtaining. *Barrett v. Otis Elevator Co.*, 246 A.2d 668 (Pa. 1968). A claimant's benefits may be modified when he has sufficiently recovered to return to gainful employment. Section 306(b) of the Act, 77 P.S. § 512.

On appeal, Employer argues that Claimant failed to establish grounds for temporary total disability benefits and should have been awarded temporary partial disability benefits. Employer maintains that the former award would have been warranted only where Claimant was unable to perform any type of work, pointing out that he resumed working at Concurrent Employer's. In addition,

---

[5] This Court denied Employer's May 2024 application for supersedeas for failure to satisfy the criteria necessary for the grant of a supersedeas as set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805, 808-09 (Pa. 1983). Specifically, the Court determined that Employer failed to make a strong showing that it was likely to prevail on the merits and that, without the requested relief, it would suffer irreparable injury. 8/06/2024 Cmwlth. Ct. Mem. Op.

Employer contends that it was not obligated to accommodate Claimant's restrictions on his regular shift, maintaining that it was required only to offer him a job within his physical restrictions, vocational capabilities, and geographic area. Employer notes that Claimant acknowledged that it offered him work within his restrictions on night shift but that he failed to return due to personal reasons.

Here, the WCJ determined that Claimant was entitled to temporary total disability benefits in the amount of $491.78 per week from April 21, 2022, and onward. F.F. No. 11(c). In so doing, the WCJ noted that Claimant did not seek inclusion of his wages with Concurrent Employer in the AWW calculation, commenting that it is clear from his testimony that there would be no documentation upon which to calculate those earnings, either pre-injury or post-injury. Claimant testified that the bartenders paid him $20 per hour in cash on a nightly basis and that he did not recall including this on his tax returns.[6] F.F. No. 6(f). Further, because Claimant has continued to work for Concurrent Employer "in a similar fashion since the work injury, it is fair to conclude that he is unable to prove any compensable loss of wages relative to his concurrent employment[.]" 6/16/2023 WCJ Decision at 9 n.1.

The Board affirmed, stating that

> [t]he amount of indemnity benefits awarded is the same as the amount listed in the Statement of Wages that [Employer] submitted. The amount of indemnity benefits awarded did not include earnings from concurrent employment as the WCJ acknowledged that "Claimant has continued working at [Concurrent Employer's] in a similar fashion since the work injury[.]"

---

[6] 1/18/2023 Hr'g, Notes of Testimony (N.T.) at 11, 16-17; R.R. at 164a, 169a-70a.

3/07/2024 Bd. Decision at 8.

We reject the determination that Claimant established grounds for temporary total disability benefits. "Where the claimant is not disabled from the other jobs [held at the time of a work-related injury,] . . . it is proper to place the claimant on partial disability, reducing the total disability benefit by the wages earned from the jobs from which the claimant is not disabled." *Res. for Hum. Dev., Inc. v. Dixon (Workers' Comp. Appeal Bd.)*, 306 A.3d 1019, 1023 (Pa. Cmwlth. 2023) [(quoting *Miller v. Workmen's Comp. Appeal Bd. (Midlantic Coast Delivery Sys.)*, 661 A.2d 916, 919 (Pa. Cmwlth. 1995)]. Accordingly, the WCJ should have awarded temporary partial disability benefits.

In addition, the WCJ did not act in accordance with the Act in determining that there was no wage loss from Concurrent Employer by comparing Claimant's earnings there before and after the work injury, finding those amounts to be consistent, and concluding that they cancelled each other out. Wages received from all concurrent separate employments should have been used to determine the AWW and calculate the amount of compensation payable by the liable employer. *Workers' Comp. Appeal Bd. (Katz) v. Evening Bull.*, 445 A.2d 1190 (Pa. 1982); *Dixon*, 306 A.3d at 1023; *Miller*, 661 A.2d at 919. Consequently, Claimant's wages from Concurrent Employer should have been included in the AWW calculation.[7]

Further, it does not matter that Claimant's earnings from Concurrent Employer may have been relatively the same before and after his work injury with Employer. What matters is that the wages from Concurrent Employer make Claimant entitled to an award of temporary *partial* disability benefits rather than

---

[7] The determination of a claimant's AWW is a question of law, subject to plenary review by this Court. *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1098-99 (Pa. Cmwlth. 2007).

temporary *total* disability benefits. In other words, Claimant's concurrent employment changes the calculation and duration of benefits.[8] Section 306(a.3)(7) of the Act,[9] 77 P.S. § 511.3(7), provides that entitlement to partial disability benefits is capped at 500 weeks, regardless of the injury and recurrences, whereas there is no cap on entitlement to temporary total disability benefits. In addition, Section 306(b)(1) of the Act, 77 P.S. § 512(1), provides that partial disability benefits are to be based on the difference between the claimant's pre-injury weekly wage and his earning power. Disability is "the loss of earning power attributable to the work-related injury." *Landmark Constructors, Inc. v. Workers' Comp. Appeal Bd. (Costello)*, 747 A.2d 850, 854 (Pa. 2000). The degree of a claimant's disability is determined by reference to how the injury affected his earnings, as opposed to looking to the extent of his physical injuries. *Id.* Consequently, where Claimant was not disabled from his job with Concurrent Employer, he should have been placed on partial disability with an appropriate consideration of the wages earned in the concurrent employment. *Dixon*. The fact that Claimant did not report this

---

[8] As Employer asserts:

> For illustrative purposes, if [Claimant's] combined [AWW] with the time of injury employer and concurrent employer is $750 and [he] returns to work earning [$200] per week, his temporary partial disability benefit rate is $333.35 per week for a period of 500 weeks. In simply awarding ongoing temporary total disability benefits utilizing the [AWW] from the time of injury employer in this example, which would be [$500], the [WCJ] awarded temporary total disability benefits to be paid at ninety percent (90%) of Claimant's [AWW] with the time of injury employer ([$450] per week) instead of sixty-six and two[-]thirds percent (66 ⅔ %) of partial disability benefits ($333.35 per week).

Employer's Br. at 16.

[9] Added by the Act of October 24, 2018, P.L. 714.

income for tax purposes is of no moment. *Kashuba v. Workers' Comp. Appeal Bd. (Hickox Constr.)*, 713 A.2d 169, 171-72 (Pa. Cmwlth. 1998) (whether compensation was reported to the taxing services is not dispositive of a determination of a claimant's AWW).

Moreover, the WCJ did not conclude that Employer's night-shift position was not within Claimant's permitted medical restrictions or vocational abilities. Claimant acknowledged that Concentra never took him off work completely;[10] Dr. Purewal testified that he would have permitted Claimant to work in the modified-duty position consistent with Concentra's restrictions;[11] and the WCJ found that the purported "job abandonment" for which Employer terminated Claimant's employment occurred only because he had restrictions for his work injury that Employer failed to accommodate on his *regular* shift.[12] Consequently, the issue is whether Claimant's personal reason for not accepting the night-shift position rendered the position unavailable. We conclude that it does not. Employer made a valid job offer to Claimant notwithstanding his personal reasons for not accepting the position. Employer was required only to offer Claimant a job within his physical restrictions, vocational capabilities, and geographic area. *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374 (Pa. 1987). As we noted in *Swope v. Workmen's Compensation Appeal Board (Harry Products, Inc.)*, 600 A.2d 670 (Pa. Cmwlth. 1991), the

> claimant cites no case where this [C]ourt concluded that an employer did not offer suitable employment because the employer failed to provide the same work hours as the

---

[10] 7/20/2022 Hr'g, N.T. at 40; R.R. at 117a.

[11] 8/11/2022 Purewal Dep., N.T. at 34; R.R. at 210a.

[12] F.F. No. 11a.

claimant's previous job when the work hours are *unrelated* to the claimant's physical condition.

*Id.* at 671 (emphasis in original). *See also Lowe v. Workers' Comp. Appeal Bd. (Temple Univ. Hosp.)* (Pa. Cmwlth., No. 1075 C.D. 2012, filed Jan. 16, 2013) (the employer met its burden of offering a suitable job to the claimant where she declined because it was on night shift and she had previously worked during the day).[13]

Further, having been offered a position within his physical restrictions and capabilities, the burden shifted to Claimant to explain some compelling reason why he was unable to work the night shift or otherwise show good cause for his failure to accept the offer. Claimant did not do so. We note the following colloquy:

> Q. [Claimant's counsel] And again, were you provided with any kind of work within those [sedentary] restrictions?
>
> A. [Claimant] So they told me that . . . they had . . . a sitting position, but that they were filled up during the day shift. So I could only work night shift.
>
> And because of my person [sic] life I wasn't able to work night shift. I told them I wasn't able to do that.
>
> And they told me I would have to go on a leave of absence.

7/20/2022 Hr'g, Notes of Testimony (N.T.) at 16; R.R. at 93a. *See also* N.T. at 42; R.R. at 119a (Reiterating that Employer offered him work on night shift, Claimant declined because "I wasn't able to work then.").

Accordingly, having concluded that Claimant was entitled to temporary partial disability benefits but not temporary total disability benefits, we affirm in

---

[13] Unreported memorandum opinions may only be cited for their persuasive value but not as binding precedent. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

part; reverse in part; and remand for a recalculation of Claimant's AWW to include the wages that he earned with Concurrent Employer and a recalculation of the amount due and owing on the penalty petition.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazon.com Services, LLC        :
and Sedgwick CMS,           :
           Petitioners     :
                            :
           v.           : No. 381 C.D. 2024
                            :
Timothy R. Carlson (Workers'    :
Compensation Appeal Board),    :
           Respondent   :

## O R D E R

AND NOW, this 7th day of May, 2025, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED in part and REVERSED in part. This matter is REMANDED in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita